# EXHIBIT G

15

## IN THE HIGH COURT OF DELHI AT NEW DELHI
## (ORDINARY ORIGINAL CIVIL JURISDICTION)
## C.S. (OS) No.    OF 2020

**IN THE MATTER OF:**

Daniel Snyder, Through his SPA Holder          ...Plaintiff

Versus

Eleven Internet Services LLP & Ors.          ….Defendants

**SUIT FOR PERMANENT AND MANDATORY INJUNCTION, PROHIBITORY INJUNCTION AND CONSEQUENTIAL DAMAGES**

**MOST RESPECTFULLY SHOWETH:**

The Plaintiff above-named respectfully submit as under:

1. The Plaintiff has been constrained to approach this Hon'ble Court through this present suit against the illegal, *mala-fide*, malicious and vindictive acts of the Defendants and especially the acts of Defendant No. 1 in defaming the Plaintiff by way of publishing defamatory, derogatory and libelous posts on its news website reliant upon false and/or wrong and/or manipulated and/or misleading facts/documents/information. Publishing such news as well as posts and further allowing the uploading/sharing/dissemination of the impugned posts by the defendants is clearly in breach/violation of the internationally recognized rights of the Plaintiff thereby causing defamation and loss of reputation to the Plaintiff.

16

2. The present suit is being filed through Colonel (Retd.) Bhushan Lal, S/o Mr. B.D Sapra, who is the Special Power of Attorney Holder of the Plaintiff duly authorized vide SPA dated 05-08-2020 executed in the United States.   Accordingly, Colonel Sapra, even otherwise, is well conversant with the facts and circumstances of the present case and is duly competent to file, sign, depose and conduct the present suit on behalf of the Plaintiff.

3. That the Plaintiff is a highly-accomplished and successful American entrepreneur, businessman and philanthropist residing in Maryland, USA and is the controlling owner of the Team, which is amongst the most prominent teams in the National Football League of America. The Plaintiff was also the founder, Chairman and Chief Executive Officer of Snyder Communications, Inc., which the Plaintiff had started from very modest beginnings and after continuous hard work, determination and persistence, led to the Plaintiff becoming the youngest ever CEO of a company listed on the New York Stock exchange in the year 1996. The Plaintiff through his tireless efforts has built the Washington Football Team into one of the most valuable professional athletic franchises in the world. The Plaintiff is also well known for his philanthropic donations to charitable causes involving support for children's hospitals, groups

17

combating exploitation of children, and victims of the September 11, 2001 terrorist attacks.

4. That the Defendant No. 1 is a Limited Liability Partnership firm incorporated in the year 2015 having its registered office at A-40, Wallfort City, Bhatagaon, Raipur Chhattisgarh which runs a news website known as 'meaww.com' i.e. Defendant No. 2. The impugned content has been uploaded on the website of the Defendant No. 2 which is viewable across the globe, without verifying the veracity and/or correctness of the same, whereby causing immense harm to the reputation and goodwill of the Plaintiff.

5. The Defendant No. 2 website claims to be, and holds itself out as, a news website. The Defendant No. 2 website publishes news stories regarding a broad variety of matters, including pop culture, law and government, and media and entertainment. In actuality, however, its purpose is far more sinister. In this search engine driven world we all live in, stories (no matter how false and defamatory) take on a life of their own when published, re-published, re-Tweeted and the like. This type of disinformation campaign can be used to damage reputations, stoke fear, and even to drive the results of elections. The Defendant No. 2 website on behalf of third parties who pay the Defendants, including Defendant

18

Nos. 3 & 4, also use other entities, including PubNinja and the Daily Net, to increase the reach of false messages that they wished to spread to readers. This powerful weapon has not gone unnoticed in Government and intelligence circles. As such, the Defendant No. 2 is frequently hired (many times anonymously) by Governments and intelligence services in order to spread misinformation on rivals. For this, the Defendant No. 2 website is paid handsomely. In addition to the above, the Defendant No. 2 website earns revenue as a mere "clickbait" enterprise. This part of its business model relies on maximizing page views, and therefore advertising revenue, by publishing articles with incendiary and misleading titles and URLs calculated to attract attention. Often, as in this case, this involves headlines that describe gruesome allegations, without context, as if they were proven fact. The Defendant No. 2 website claims a "social media following of over 15 million" across multiple jurisdictions. In a July 7, 2016 press release, the Defendant No. 2 website claimed to have reached 150 million registered users, receives one billion page views a month, and was ranked by Alexa (an Amazon company) as one of the top 500 websites in the world.

6. That the Defendant Nos. 3 & 4 are the partners of the Defendant No. 1 company thus exercising direct control over the affairs of the Defendant

19

Nos. 1 & 2 including control over the content that is published on the Defendant No. 2 website.

7. That the Defendant Nos. 5 & 6 are writers of the Defendant No. 2 website who have written the impugned articles published on the Defendant No. 2 website. It is submitted that the Defendant Nos. 5 & 6 have miserably failed to uphold the basic ethics and tenets of fairness and have written and published the impugned articles with reckless disregard towards the law, and without verifying the correctness of the allegations levied against the Plaintiff in the impugned articles published on the Defendant No. 2 website.

8. That Defendant No. 7 is a John Doe Party which represents every unknown and unnamed person who has been who has been posting, producing, sharing, disseminating, publishing or causing to publish on the internet or/and through social media platforms, the false and defamatory posts against the Plaintiff.

9. That the brief facts necessitating the filing of the present suit are stated herein under:

   a). That the Plaintiff on or about 16th July, 2020 came to know about publishing of false, highly defamatory and malicious news against the Plaintiff published on the Defendant No. 2 website, based on

20

absolutely false and/or wrong and/or misleading facts/documents/statement wherein the headline of the defamatory Article at the URL https://meaww.com/washington-redskins-owner-dan-snyder-to-step-down-owing-to-sex-trafficking-allegations-fan-reactions read as *"Washington Redskins owner Dan Snyder faces sex trafficking allegations; Internet says, 'He was on Epstein's list[.]'* It had been alleged in the article that the minority owners of the Team owned by the Plaintiff were "apparently looking at bringing him down citing inappropriate and unchaste behavior as one of the major reasons."  It is stated that the article falsely accused the Plaintiff of personally committing extremely serious sexual misconduct, as well as association with convicted sex offender and infamous sexual predator Jeffrey Epstein, who committed suicide in prison while facing sex trafficking charges and is commonly alleged to have maintained a "list" of wealthy individuals in his social circle who participated in sexual misconduct involving minors in his presence. Another article published on the Defendant No. 2 website at the URL https://meaww.com/washington-redskins-dan-snyder-jeffrey-epstein-sexual-harrasment-sex-trafficking-scandal-name-change

21

which bears the headline *"#RedskinsScandal: Will Dan Snyder rename Washington Redskins the 'Epsteins'? Angry Internet screams 'throw him out[.]'"*. It is submitted that the said article expressly refers to, and repeats, the false allegations of the previous article as stipulated herein above *i.e.*, the false claims that the Plaintiff is linked to sexual predator Jeffrey Epstein and that the Plaintiff is or was involved in sexual misconduct, including sex trafficking. The said article also falsely claims, again citing an anonymous tweet that *"Dan Snyder has decided on a new team name: [Jeffrey] Epsteins."*

It is submitted that the entire contents of the impugned post/article are highly defamatory, derogatory and libelous and based on no factual evidence at all. That the impugned post/article has caused irreparable loss and harm to the reputation and goodwill of the Plaintiff. The contents of the impugned article published on the Defendant No. 2 website are being filed along with the present suit and the Plaintiff craves leave to rely upon the contents of the same. It is submitted that the statements are extremely irresponsible, incendiary, and damaging false statements, made by Defendants without any investigation or basis in fact, with

22

deliberate malice toward the Plaintiff and with reckless disregard for the truth. The Defamatory Statements were and are utterly baseless, and represent nothing more than Defendants' attempt to generate attention and revenue from its hidden clients by publishing deliberately inflammatory headlines which they knew to be false and/or utterly failed to investigate.

b). That from a bare reading of the contents of the impugned URL's/weblinks consisting of the posts/articles published on the Defendant No. 2 website, it is amply clear that derogatory, libelous and malicious aspersions have been casted against the Plaintiff accusing the Plaintiff of sexual offences. The said allegations are absolutely false, frivolous, and made with absolute recklessness which has caused grave prejudice and damage to the hard-earned reputation, goodwill and image of the Plaintiff.

c). It is submitted that the false allegations published by way of the impugned articles/posts uploaded on the Defendant No. 2 website have been shared on numerous social media platforms as set forth above.

d). It is submitted that the entire impugned content is based on no evidence and has been published without verifying facts and/or

23

documents which goes against the basic tenets of ethical and fairness. It is submitted that the Defendants have published/broadcasted the impugned articles/posts on its website which has further been shared/uploaded/disseminated on numerous social media platforms without verifying the facts and/or ascertaining the veracity of the frivolous allegations that have been levelled against the Plaintiff. It is submitted that the impugned news has been published by the Defendant No. 1 with reckless disregard and without seeking any information qua the same from the Plaintiff, with the sole intention to malign and tarnish the image, reputation and goodwill of the Plaintiff.

10. That, the Ld. Counsels on behalf of the Plaintiff addressed a communication dated 22.07.2020 directing the Defendants to remove/take-down the impugned posts/articles from its website, further also requesting disclosing the details on who had hired Defendants to publish the stories and from where they had obtained information qua the said impugned articles, albeit, Ms. Alysha Tharani acting on behalf of the Defendants, vide email dated 24.07.2020 apprised the Ld. Counsels on behalf of the Plaintiff that

24

they were not required to take any such action, although the offending articles had been removed. It is submitted that the offending articles albeit removed, are still available for viewership to a limited extent. A basic search upon the search engine bing.com churned out the following result:



25

It is submitted that the Defendants in their correspondence claimed to have removed the impugned articles from its website, albeit a bare perusal of the image above, makes it abundantly clear that it has not been completely removed from the webpage. The 5th link from the top in the image as reproduced herein above displays an error upon opening, albeit, the contents of the said impugned article are still visible upon a basic search. Furthermore, numerous other websites have relied upon the derogatory and defamatory articles published by the Defendants. The same can be perused from the last result of the image reproduced herein above, wherein the author has reiterated the contents of the impugned articles/posts uploaded on the Defendant No. 2 website.

11. The Defendants here purport to run news sites and related companies but, in fact, truly are (to quote a popular phrase of the day) "fake news" published on behalf of hidden clients. Rather than being legitimate news sources and reporters, the Defendants intentionally sow misinformation at the behest of their well-heeled and well-placed clients – often national governments and intelligence services – with their clients generally cloaked behind several layers of anonymous corporate entities.

26

12.  While much of what Defendants publish is simply brushed aside as the clickbait or search engine drivers that it is; that stops now. It is submitted that the Defendants, compensated by their clients, have published, worldwide, the most debased, untrue, and slanderous statements, maliciously and falsely accusing the Plaintiff Daniel Snyder of heinous crimes, that Defendants published with reckless disregard for their falsity. Well-established law holds that, regardless of the fact that the Plaintiff Mr. Snyder is a public figure, Defendants' statements are flagrantly unlawful, and that the Defendants, by publishing these falsehoods, are liable to pay not only damages but also punitive damages in favor of the Plaintiff Mr. Daniel Snyder.

13.  That it is submitted that the Defendant No. 2 i.e. Media Entertainment Arts WorldWide ("MEAWW") is an Indian media company which operates in the United States as non-party New Content Media, Inc. and is owned by the Defendant No. 1 i.e. Eleven Internet Services LLP ("Eleven"), an Indian Limited Liability Partnership firm, controlled by the Defendant Nos. 3 & 4. The Defendant No. 2 website MEAWW publishes its news website at www.meaww.com, as well as running social media accounts on

27

Facebook, Twitter, and other platforms associated with MEAWW. It is submitted that the Defendant Nos. 3 & 4 i.e. brothers Nirnay Chowdhary and Anay Chowdhary both nationals and residents of India, control the affairs and operations of the Defendant Nos. 1 & 2 and are therefore directly responsible and liable for the content that is uploaded and published on the Defendant No. 2 website. The Defendant Nos. 3 & 4 i.e. Nirnay Chowdhary and Anay Chowdhary also run The Daily Net and PubNinja, media companies based in India that further their interests on social media. Defendant No. 5 i.e Ms. Prarthna Sarkar and Defendant No. 6 i.e. Ms. Jyotsna Basotia, both residents of India, are writers and authors with the Defendant No. 2 website i.e. MEAWW.

14. That it is submitted that the Defendant No. 2 website i.e. MEAWW has worldwide reach, as it publishes globally via the internet and receives internet traffic from India, the United States, and many other countries the world over. As has already been stated in the preceding Paras, the Defendant No. 2 website claims that it has reached 150 million registered users, receives one billion page views a month, and was ranked by Alexa (an Amazon company) as one of the top 500 websites in the world.

28

15. That it is submitted that the articles dated July 16, 2020, uploaded on the Defendant No. 2 website i.e. MEAWW written by the Defendant Nos. 5 & 6 respectively, published at the behest of the Defendant Nos. 3 & 4 i.e. Nirnay Chowdhary and Anay Chowdhary are absolutely untrue and wholly fabricated articles regarding the Plaintiff i.e. Mr. Snyder, falsely accusing him of a broad array of acts of criminal sexual misconduct, including involvement in sex trafficking and affiliating with sexual predator Jeffrey Epstein.

16. That it is submitted that these false and fabricated articles purported to be news, are utterly fabricated and have no legitimate basis whatsoever. In fact, like much of the Defendant No. 2 website i.e. MEAWW's content the impugned articles rely on "the internet" as a source.

17. It is submitted that the false allegations Defendants have seeded on the internet have taken root beyond the Defendant No. 2 website i.e. MEAWW itself. For instance, on or about July 16, 2020 – not coincidentally, the very same day as the defamatory articles by the Defendant No. 2 website were published– the following appeared on a Twitter account that has been

29

confirmed as a fake account existing for no purpose other than

to propagate false and misleading information:

> *According to insiders and anonymous Washington Post employees, the [upcoming] article will allege that: Dan Snyder abuses drugs and alcohol[;] Snyder paid off refs. Some refs have made $2 million from him. And Snyder is not the only team owner paying off refs. Others do it too. Snyder and former Redskins coach Jay Gruden, brother of Jon Gruden, pimped out their cheerleaders to season ticket holders while holding their passports from them in a foreign country. Jay Gruden and then Redskins running back Kapri Bibbs were sleeping with the same woman. When Jay found out, he got petty and benched Bibbs. During that game when Bibbs was on the bench, Bibbs' replacement missed a block and that resulted in quarterback Alex Smith suffering a broken leg. Alex hasn't been able to play football ever since[.] Snyder and Gruden would hold sex parties with rampant drug usage and some sexual assaults[.] Snyder held nude photoshoots with the Redskins cheerleaders[.] Lawyers are already involved[.]*

It is submitted that the Plaintiff is unaware as to whether the account

through which the aforementioned content had been uploaded on the

social media platform *Twitter* belonged to a real person or was one of

the "Bots" utilized to further propagate The Defendant No.2 website's

for-profit lies, and the same is required to be ascertained.

18.   That it is submitted that these false statements were further repeated on

the very same day without attribution to the Defendant No. 2 website

30

but without any further basis whatsoever in a Facebook account for a well-known fan group for the football team belonging to the Plaintiff. That statement also added (again falsely) that the U.S. Federal Bureau of Investigations "possibly" may be involved.

19.  That the statements that Defendants published, and that were repeated and further propagated in the July 16 Tweet and Facebook post, about the Plaintiff i.e. Mr. Snyder are categorically false.  Moreover, the Defendants published these slanderous, inflammatory statements about the Plaintiff with complete disregard for their basis in fact at best, and deliberate intent to damage the Plaintiff.

20.  That it is submitted that it is correct that the Plaintiff owns the Washington Football Team in the National Football League in the United States, and yes, that subjects him and the Team to extensive coverage in the media.  When that coverage touches on the play of the Team, the operations of the Team, or other legitimate issues surrounding the Team, it is fair game for true and accurate coverage albeit it is submitted that the Plaintiff is much more than the owner of the Team.  He is a husband.  He is the proud father of three children. He is a philanthropist.  He has friends, family members, and business

3]

associates throughout the world.  None of them should be subject to reading such shocking, false statements about the Plaintiff in any event.

21.   Accordingly, the Plaintiff has filed the present suit against the heinous false allegations against him made by the Defendants allegedly on behalf of a client in order to rectify the harm to his personal and professional reputation as a result of Defendants' false, defamatory statements, which constitute classic examples of defamation *per se*. Equally importantly, the present suit has been filed in order to deter Defendants and other "hired gun" misinformation providers from taking similar actions on behalf of their illicit clients against him or anyone else so that their family and friends can be spared the same terrible experience endured by the Plaintiff, his family, his friends and his business.

22.   That the Defendants have singled out the Plaintiff by publishing the news article on their website and further allowing to upload/share/disseminate/publish the highly defamatory and malicious posts against the Plaintiff alone, in order to ensure that irreparable loss and injury is occasioned to the hard earned reputation and goodwill of the Plaintiff herein. Publishing of such news articles by the Defendants and further allowing the uploading/sharing/disseminating/publishing by

32

Defendants is against the internationally recognized Right to Reputation as granted under Article 12 of the Universal Declaration of Human Rights and Article 17 of the International Covenant on Civil and Political Rights, to which India is a signatory.

23. That the Right to Freedom of Speech and Expression of news broadcasters comes along with a duty and responsibility of not abusing such freedom in furtherance of their personal vendetta towards any particular entity. It is submitted that although the freedom of press is an inalienable right, the same is not absolute and is subject to be controlled under Article 19(2) of the Constitution of India as uncontrolled right to speech leads to anarchism. The Freedom of Speech and Expression as guaranteed by the Constitution does not confer an absolute right to speak or publish whatever one chooses and it is not an unrestricted or unbridled license that may give immunity and prevent punishment for abuse of the freedom. The right has its own natural limitation and supposed journalists are in no better position than any other person. They have no greater freedom than others to make any imputations or allegations sufficient to ruin the reputation of a citizen. A news item has the potentiality of bringing dooms day for an individual. It can cause far reaching consequences in an individual and

33

country's life. The media has great power in impressing minds of people and it is essential that persons responsible for publishing anything in newspapers should take good care before publishing anything which tends to harm the reputation of a person. Reckless defamatory comments as is the case in the present scenario are unacceptable. This Hon'ble Court, in a catena of judgements has held that speech that the Press enjoys can be curtailed with reasonable restrictions in instances where they are not entitled to either make or circulate defamatory statement, false statements made with the intention to deteriorate the image of a public figure, etc. The Defendant Nos. 5 & 6 who are the original authors of the impugned articles/posts uploaded on the Defendant No. 2 website have failed to exercise caution, have failed to verify and/or ascertain the truthfulness and correctness behind the said allegations, and have proceeded with publishing the impugned articles, with malicious intent so as to damage the Plaintiff's reputation and goodwill, and are thus liable to be proceeded against in accordance with law. Further, the Defendant Nos. 3 & 4 who exercise actual control over the Defendant Nos. 1 & 2 and thus have effective control over what is published on the Defendant No. 2 website have also failed in their duties, and have further failed in

34

ascertaining the correctness and veracity of the allegations levied against the Plaintiff in the impugned articles, with a view to tarnish the reputation of the Plaintiff, and have thus effectively led to the launch of a smear campaign against the Plaintiff. It is relevant to submit herein that the said Defendants have earned revenue by defaming and derogating the Plaintiff on behalf of undisclosed third-party clients and are therefore liable to be proceeded against in accordance with law.

24. Thus, the present defamatory, derogatory and vilification campaign initiated by the Defendants has been carried out with an ulterior motive of Defendants against the Plaintiff.

25. That the vilification campaign has been intensified by the constant sharing of the impugned post published/broadcasted on the Defendant No. 2 website, further being repeatedly shared/uploaded/disseminated on social media platforms as has been elucidated in the preceding Paras, with the sole objective of lowering the name, image, reputation, good will of the Plaintiff in the eyes of general public across the globe. Uploading/sharing/disseminating of such a post cannot be said to be news and/or fair reporting of the news.

26. That, as such the impugned news articles published by the Defendants which have been constantly uploaded/shared/disseminated on social

35

media platforms are garnering wide viewership in India as well as abroad including within the jurisdiction of this Hon'ble Court. The news articles published by the Defendants can still be viewed over the internet on personal computers or mobile devices through a basic search, despite the impugned articles having been taken down by the Defendant No. 2 as has already been elucidated upon herein above in the preceding Paras. Thus, the impugned news articles published by the Defendants which has further been shared/disseminated on social media platforms is easily accessible not only in India but across the globe. The Plaintiff has received frantic calls from friends, business associates as well as family members enquiring into the correctness of the allegations, and they have categorically told the Plaintiff that the image and reputation of the Plaintiff in their eyes has gone down considerably owing to the allegations levied in the impugned news articles published by the Defendants.

27. That the impugned news articles/posts as published on the Defendant No. 2 website have been repeatedly shared on social media platforms and have received a large number of comments from people which clearly establishes, that the defamatory news articles published by the Defendants have highly prejudiced the good will and reputation of the

36

Plaintiff. It is submitted that on the internet, information is accessible worldwide which is causing unwarranted irreparable reputational harm to the Plaintiff for no fault of the Plaintiff.

28. That the Defendants are misusing/overreaching the freedom guaranteed to the Press and supposed journalists under Article 19(1)(a) of the Constitution of India. Even a legitimate Journalist's right to know and their right to publish is neither more or less than that of the general public as they are trustees of the general public for this purpose. The Defendants are therefore expected to post articles on the basis of true, correct and verified facts objectively. It is respectfully submitted that this a fit case where restraint ought to be granted by this Hon'ble Court since the facts of this case clearly demonstrate that the reputation of the Plaintiff has been deliberately maligned/tarnished by the Defendants. It is submitted that the exercise of true and legitimate journalistic freedom lies at the core of speech and expression protected by Article 19(1)(a). The publishing of views and news articles falls within the ambit of the Right to Freedom of speech and expression under Article 19(1)(a). However, the exercise of that fundamental right is not absolute and is answerable to the legal regime enacted with reference to the provisions of Article 19(2).

37

29. That the entire campaign has been carried out with a premeditated object of tarnishing and maligning the hard earned reputation and goodwill of the Plaintiff as part of a malicious campaign / propaganda against the Plaintiff. That such abuse of the dominant position by the Defendants is against all canons of ethics especially when the object is to unfairly influence the reputation and good will of the Plaintiff by spreading wrong and incorrect information in the minds of the people across the globe.

30. That, since the Defendants in blatant disregard for the rule of law and legitimate journalistic ethics and by misusing the process of law, have left no stone unturned to vilify, malign and denigrate the name, image, reputation and good will of the Plaintiff in the eyes of the general public thereby causing wrongful losses to the Plaintiff and wrongful gains to themselves.

31. That the contents and the claims made in the impugned news articles/posts are baseless and reckless without any regard to the truth and without due care or verification. That the defamatory news has been published by the Defendants on the Defendant No. 2 website which is further being disseminated/shared on social media platforms only with an intention to defame, tarnish and malign the reputation and

38

goodwill of the Plaintiff. These facts also indicate that the Plaintiff is being targeted in order to malign his reputation and good will in the eyes of public at large.

32. That, the aforementioned assertion in the impugned news articles/posts is based on no evidence at all. This shows that the impugned news articles/posts are a mere hoax and the allegations are per se false, misleading and defamatory. It is clear that the intention is purely malicious and has been motivated to malign and affect the reputation and credibility of the Plaintiff. The false and defamatory news articles/posts published by the Defendants have been created, uploaded, and circulated with the sole intention of creating panic in the minds of the general public. That the said news is only with an intention to deceive the public at large and the same has been done only to cause wrongful losses to the Plaintiff.

33. That therefore, the impugned news articles/posts are further immensely defaming and derogating the image of the Plaintiff painstakingly built vide constant tireless efforts throughout the years.

34. That in view of the above, it is apparent that the said impugned news articles/posts are not in any manner in the interest of general public and the same have been published in utmost reckless manner without

39

ascertaining the veracity of the same. Thus making it evident that the same has been done, only with an intention to tarnish the image, reputation, goodwill and business of the Plaintiff.

35. That the Defendants, despite having actual knowledge of the false, derogatory and defamatory contents of the post, proceeded to publish the same, and have further failed to remove the said impugned articles from its website in their entirety, as has been elucidated in the preceding Paras, thus the Defendants are liable for the said acts of defamation and consequent damages suffered by the Plaintiff on account of loss of reputation and goodwill. That if a person knowingly permits another to communicate information which is defamatory, the said person who is allowing such dissemination would also be liable for causing defamation. Once the said Defendants have been informed of the defamatory contents of the post, the said Defendants became liable for the publication of defamation by acquiescence that is to say by permitting publication to continue for a period of time when they had the power to prevent it.

36. That the Defendants' deliberate inaction has built up a negative sentiment on the internet and social media against the Plaintiff and has severely tarnished and maligned his reputation and goodwill.

40

## CAUSE OF ACTION:

37.  That the cause of action for filing the present suit for the first time arose on 16th July, 2020, when the Plaintiff came across the defamatory news articles/posts published by the Defendants on the Defendant No. 2 website which has further been uploaded/shared/disseminated on numerous social media platforms. The cause of action further arose on 22.07.2020 when the Ld. Counsels for the Plaintiff directed the Defendants to take down/remove the impugned URL's/weblinks comprising of the impugned post, further also directing the Defendants to disclose the details on who had hired Defendants to publish the stories and from where they had obtained information qua the said impugned articles uploaded on the Defendant No. 2 website. The cause of action further arose on 24.07.2020 when Ms. Alysha Tharani acting on behalf of the Defendants refused to provide any such information, although taking down the offending articles. The   cause   of action   is still subsisting as the impugned news articles/posts are still receiving attention on social media platforms as well as the viewers of the Defendant No. 2 inasmuch as the impugned posts are

41

still technically visible over the Defendant No. 2 website upon a basic internet search, thereby causing massive loss in reputation and goodwill to the Plaintiff.

38.  That the Plaintiff has suffered, and is likely to further suffer, irreparable harm and injury with regard to the goodwill and reputation of the Plaintiff. Therefore, monetary compensation alone would not be sufficient to address the continuing harm resulting from acts of defamation committed by the Defendants.

39.  That the contents of the news articles/posts are utterly malicious and completely bereft of truth and there is an immediate pressing injury to Plaintiff. The Plaintiff apprehends that the Defendants will persist with their malicious conduct, and the Defendants will continue to further defame the Plaintiff which would result in further irreparable injury to the Plaintiff reputation and goodwill.

40.  That the Plaintiff seeks damages on account of loss of reputation, goodwill and business caused to it across the globe by the Defendants on account of the acts of defamation and derogation. The Plaintiff enjoys considerable reputation across the globe. The Plaintiff states that the defamatory posts published by the Defendants have been shared and circulated as stated above, to a

42

large number of persons across the globe, causing serious damage to the reputation of the Plaintiff. It is stated that on account of the transmission of the defamatory news articles/posts by the Defendants, Plaintiff has suffered massive reputational loss, which the Plaintiff currently estimate at INR 75 Crores and the Plaintiff craves leave of this Hon'ble Court to ascertain further damages, if any, in favor of the Plaintiff on account of the vindictive and *mala-fide* acts of the Defendants qua defaming the Plaintiff. The Defendants are jointly and severally liable to pay the damages suffered by the Plaintiff.

41. That the Plaintiff has not filed any other or similar suit in this Hon'ble Court or in any other Court in this matter nor is any other case pending in any court.

42. That the Plaintiff confirms the authenticity of the documents and states that the documents filed along with the present suit are true copies of their respective originals along with internet print outs and supporting Section 65B certificate.

43. That the Plaintiff submits that all documents in its possession are being filed however the Plaintiff craves leave of this Hon'ble Court under Order II Rule 2 CPC to add further contentions, facts, claims,

43

reliefs and place reliance upon other such additional documents with respect to the cause of action stipulated herein at a later stage.

## JURISDICTION:

44. That this Hon'ble Court has territorial jurisdiction in the matter as the impugned news articles/posts had been accessed, viewed and read by various individuals including the SPA holder of the Plaintiff within the territorial jurisdiction of this Hon'ble Court. Furthermore, the impugned news articles/posts in question published on the Defendant No. 2 website were able to be seen and accessed by the general public across the world including in Delhi and as such this Hon'ble Court has the necessary territorial jurisdiction to try and entertain the present suit.

## COURT FEES:

45. The value of the present suit for the purposes of court fee and jurisdiction is as follows: -

a)      For a decree of permanent injunction in favour of the Plaintiff restraining the Defendants, their employees, agents, officers, assigns, representatives, group companies from in any manner

44

airing/publishing or propagating in any mode or manner either orally/writing/telecasting any material /article/ news / views/report etc. on their websites/webpages/channels including but not limited to 'meaww.com' which are false and/or misleading and/or defamatory and which relate to the Plaintiff including the impugned news articles/posts and/or any such programs/videos incidental thereto which lowers the goodwill and reputation of the Plaintiff in the eyes of the general public, the present relief is valued at Rs. 200/-, accordingly ad valorem court fees of Rs. 20/- is being affixed.

b)    For a decree of permanent injunction whereby directing the Defendants to permanently block/restrict access to the news/post mentioned in the list of documents attached with the present Plaintiff and/or any other active or similar posts which contain or purport to contain, the defamatory, derogatory and denigrating content or part thereof published and/or posted on their respective channels/websites, and also from all media in the control of the Defendants in India and globally, including but not limited to Defendants channels, website, webpages, mobile application, the

45

present relief is valued at Rs. 200/-, accordingly ad valorem court fees of Rs. 20/- each is being affixed.

c)  For a decree of mandatory injunction in favour of the Plaintiff thereby directing the Defendants, their employees, agents, officers, assigns, representatives, group companies to permanently block/restrict access to the news/post mentioned in the list of documents attached with the present Plaintiff and/or any other active or similar posts which contain or purport to contain, the defamatory, derogatory and denigrating content or part thereof published and/or posted on their respective channels/websites, and also from all media in the control of the Defendants in India and globally, including but not limited to Defendants' channels, website, webpages, mobile application, the present relief is valued at Rs. 200/-, accordingly ad valorem court fees of Rs. 20/- each is being affixed.

d)  For a decree of mandatory injunction in favour of the Plaintiff restraining the Defendants, their employees, agents, officers, assigns, representatives, group companies to permanently block/restrict access to the news/post mentioned in the list of documents attached with the present Plaintiff and/or any other

46

active or similar posts which contain or purport to contain, the defamatory, derogatory and denigrating content or part thereof published and/or posted on their respective channels/websites, and also from all media in the control of the Defendants in India and globally, including but not limited to Defendants' channels, website, webpages, mobile application; on receipt of any complaint in future from the Plaintiff with regard to the impugned post or any other URL/Weblinks containing or purporting to contain in part or whole the contents of the impugned news articles/posts, the present relief is valued at Rs. 200/-.

e)    For a decree of prohibitory injunction in favour of the Plaintiff restraining the Defendants, their employees, agents, officers, assigns, representatives, group companies from publishing any such news articles/posts in the future against the Plaintiff without ascertaining the veracity and truthfulness of the same from the Plaintiff the present relief is valued at Rs. 200/-, accordingly ad valorem court fees of Rs. 20/- each is being affixed.

f)    For an order directing the Defendants to disclose the details as to who had hired Defendants to publish the stories and from where they had obtained information qua the said impugned

47

articles uploaded on the Defendant No. 2 website to the Plaintiff, the present relief is valued at Rs. 200/-, accordingly ad valorem court fees of Rs. 20/- each is being affixed.

g)     For a decree of damages the relief is provisionally valued for the purposes of court fee at Rs. 75,00,00,000/- qua the Plaintiff and ad volrem court fees of Rs. 74,30,000/- is affixed thereon. The Plaintiff undertakes to make up the deficiency of court fee, if any, once the actual damages are ascertained and awarded to the Plaintiff.

## LIMITATION:

46.     The present suit is well within the period of limitation.

47.     That the present dispute is not a commercial dispute as per Section 2(c) of the Commercial Courts. Commercial Division & Commercial Appellate Division of High Courts Act, 2015. Thus, the present suit is being filed as an ordinary suit.

## PRAYER

In the facts and circumstances of the present case, it is most respectfully prayed that this Hon'ble Court may be pleased to grant;

48

i.   Pass a decree of permanent injunction in favour of the Plaintiff restraining the Defendants, their employees, agents, officers, assigns, representatives, group companies from in any manner airing/publishing or propagating in any mode or manner either orally/writing/telecasting any material /article/news/views/report etc. on their websites/webpages/channels including but not limited to 'meaww.com' which are false and/or misleading and/or defamatory and/or disparaging which relates to the Plaintiff including the impugned news articles/posts/programs/ videos which lowers the goodwill and reputation of the Plaintiff in the eyes of the general public.

ii.  Pass a decree of permanent injunction whereby directing the Defendants to permanently block/restrict access to the news articles/posts/Weblinks/URLs mentioned in the list of documents attached with the present Plaintiff and/or any other active or similar posts which contain or purport to contain, the defamatory, derogatory and denigrating content or part thereof posted on their respective websites, and also from all media in the control of the Defendants across the globe, including but not limited to Defendants website, webpages, mobile application, across the globe;

49

iii.   Pass a decree of mandatory injunction in favour of the Plaintiff thereby directing the Defendants, their employees, agents, officers, assigns, representatives, group companies to permanently block/restrict access to the news/post mentioned in the list of documents attached with the present Plaintiff and/or any other active or similar posts which contain or purport to contain, the defamatory, derogatory and denigrating content or part thereof published and/or posted on their respective channels/websites, and also from all media in the control of the Defendants in India and globally, including but not limited to Defendants' channels, website, webpages, mobile application;

iv.   Pass a decree of mandatory injunction in favour of the Plaintiff restraining the Defendants, their employees, agents, officers, assigns, representatives, group companies to permanently block/restrict access to the news/post mentioned in the list of documents attached with the present Plaintiff and/or any other active or similar posts which contain or purport to contain, the defamatory, derogatory and denigrating content or part thereof published and/or posted on their respective channels/websites, and also from all media in the control of the Defendants in India and globally, including but not limited to

50

Defendants' channels, website, webpages, mobile application; on receipt of any complaint in future from the Plaintiff with regard to the impugned news article/post or any other URL/Weblinks containing or purporting to contain in part or whole the contents of the impugned news articles/posts;

v.     Pass a decree of Prohibitory Injunction in favour of the Plaintiff restraining the Defendants, their employees, agents, officers, assigns, representatives, group companies from publishing any such news articles/posts in the future against the Plaintiff without ascertaining the veracity and truthfulness of the same from the Plaintiff;

vi.    Pass an order whereby directing the Defendants to disclose the details as to who had hired Defendants to publish the impugned news articles/posts and the sources from where the Defendants had obtained information qua the said impugned articles uploaded on the Defendant No. 2 website, to the Plaintiff;

vii.   Pass a decree of rendition of accounts of Defendants whereby conducting an enquiry as to assess the exact quantum of revenue generated by the Defendants by publishing or propagating the impugned   news   articles/posts   and/or   any   such   incidental

51

articles/videos/programs/posts/weblinks/URLs, defaming the Plaintiffs;

viii. Pass a decree of damages to the tune of Rs. 75,00,00,000/- in favour of the Plaintiff and jointly and severally against the Defendants;

ix. for costs of this suit;

x. Any other and further reliefs as this Hon'ble Court may deem fit and proper to meet the ends of justice.

**PLAINTIFF**
**Through its SPA HOLDER**

THROUGH:

**SIMRANJEET SINGH, AADHAR NAUTIYAL**
**ATHENA LEGAL**
37, Link Road, First Floor,
Lajpat Nagar-III,
New Delhi – 110024
9205109664
aadhar.nautiyal@athenalegal.in

Place: New Delhi
Date: 07/08/20200

52

## VERIFICATION:-

Verified at New Delhi on this 5th day of August, 2020 that the contents of para nos. 1-21 & 36 of the present plaintiff are true and correct to the best of my knowledge and belief. The contents of paragraph nos. 22-35, 37-47 & Prayer are true and correct to the best of my knowledge and information and legal advice received and believed to be true. The content of last para is prayer before this Hon'ble Court.

**PLAINTIFF**
**Through its SPA Holder**

53

**IN THE HIGH COURT OF DELHI AT NEW DELHI**
**(ORDINARY ORIGINAL CIVIL JURISDICTION)**
**C.S. (OS) No.     OF 2020**

**IN THE MATTER OF:**

Daniel Snyder, Through his SPA Holder                    ...Plaintiff

Versus

Eleven Internet Services LLP & Ors.                    ….Defendants

**AFFIDAVIT**

I, Col. (Retd.) Bhushan Lal, aged about 54 years, S/o Sh. R.D Sapra, Special Power of Attorney Holder of Plaintiff having my office at 105A, Indraprakash Building, 21 Barakhamba Road, New Delhi-110001, duly authorized vide SPA dated 05.08.2020 executed in the United States of America, the deponent above-named, do hereby solemnly affirm and declare as under:

1. I am the SPA Holder of the Plaintiff duly authorized vide SPA dated 05.08.2020, executed in the United States of America, in the above suit and competent to swear this affidavit.

2. I have read and understood the accompanying suit and state and verify that the averments made in the same are based on the records of the Plaintiff and based on legal advice received from the Plaintiff and are believed by me to be true and the averments made in the last unnumbered paragraph are in the nature of humble prayers of the Plaintiff before this Hon'ble Court.

3. That the documents filed herewith are true copies of their respective originals.

**DEPONENT**

S4

## VERIFICATION

I, Bhushan Lal, verify that the averments made in paragraph 1-3 of my affidavit are true to my knowledge, that no part of it is false and nothing has been concealed there from.

Verified at New Delhi on this the 5th day of August, 2020.

**DEPONENT**