**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **In re Application of Daniel Snyder for an Order Directing Discovery from Mary Ellen Blair and Comstock Holding Companies, Inc. Pursuant to 28 U.S.C. § 1782** | Misc. Action No. 1:20-mc-00023 |

**OPPOSITION TO APPLICATION FOR AN ORDER
DIRECTING DISCOVERY FROM COMSTOCK HOLDING COMPANIES, INC.**

Nicholas M. DePalma (VSB 72886)
Christian R. Schreiber (VSB 89544)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
Tel: (703) 905-1455
Fax: (703) 821-8949
nmdepalma@venable.com
crschreiber@venable.com

*Counsel for Comstock Holding Companies, Inc.*

i

**Table of Contents**

Introduction ............................................................................................................................. 1

Relevant Background ............................................................................................................. 3

I.  Snyder files the India Action on August 7, 2020 for defamation based on several Internet articles and seeks an order directing Defendants to disclose who hired them and where they obtained information ................................................................. 3

II. Snyder circumvents the India Action by filing here on August 10, 2020 ........................ 3

III. Snyder's two limited allegations about Comstock are inaccurate ...................... 4

IV. There are other indicia that Snyder is pursuing discovery for purposes other than the India Action ............................................................................................................ 5

Legal Standard ....................................................................................................................... 8

Argument ............................................................................................................................... 9

I.  The Court should deny the petition to serve subpoenas on Comstock and issue a protective order because Snyder cannot satisfy the "for use" statutory requirement because allowing the discovery would circumvent the India Action ................. 9

II. In the alternative, the Court should deny the petition and issue a protective order because Snyder's subpoenas are pure speculation and accompanied by indicia of an improper purpose ....................................................................................... 10

   A. The subpoenas are a speculative fishing expedition ............................ 10

   B. The subpoenas seek information irrelevant to the India Action .......... 12

   C. The subpoenas are overbroad ................................................................ 13

   D. The subpoenas bear indicia of an improper purpose ........................... 13

III. In the alternative, the Court should deny the Petition and issue a protective order because any information can be obtained from other, more convenient sources ............. 14

IV. Comstock does not own or manage the buildings at issue ............................... 15

Conclusion ............................................................................................................................ 16

**Introduction**

At best, Petitioner Daniel Snyder's request to take discovery from Comstock Holding Companies, Inc. ("Comstock") is a fishing expedition. Snyder speculates that because: (1) Respondent Blair "left on bad terms," (2) admitted to others she had spoken with the *Washington Post*, and (3) experienced financial difficulties—it is "highly questionable" whether she can afford $2,100 in rent. Snyder then concludes that Blair must get a special discount or have a "financial benefactor."

It is over the line for Snyder to use this speculation to serve a subpoena on the company he contends (inaccurately) is Blair's landlord. If Snyder gets discovery from Comstock and confirms that his speculation is unfounded, then who is next? Does he pursue Blair's car dealer, online grocer, and credit card company? If Snyder comes up empty, does he then subpoena the next ex-employee on the list? The same reasoning would justify each of these actions.

More likely, Snyder's request is an attempt to leverage the discovery process for an improper motive; namely, to publicly cast aspersions on one of the minority owners of the Washington Football Team: Dwight Schar, and his family. First, Snyder's Petition does not satisfy the mandatory elements of Section 1782, including that the discovery be "for use" in a foreign action. In his foreign action, Snyder seeks "an order directing the Defendants to disclose the details as to who had hired Defendants to publish the stories and from where they had obtained information." Docket No. 1-9 ¶ 45(f). Leveraging this Court to get that relief early is not "for use" in a foreign proceeding.

Second, Snyder's lawyer, Joseph Tacopina, boasted in a recent podcast that Snyder's goal is not to prosecute in India, but to gather facts for U.S.-based litigation:

> ***JP FINLAY: What's your goal with this thing? The goal is not to prosecute in India, right? I imagine you want everything to happen here in the old US of A?***

1

> JOE TACOPINA: We are -- we did sue that company in India. That's for sure. ***But, yes***, here's our goal …. The goal is to ensure that the full weight of the law comes down heavily on those responsible ….

**Exhibit 1** at 13:1-11 (partial transcript of 8/14/2020 interview with J. Tacopina) (emphasis added). This admission further prevents Snyder from satisfying the "for use" requirement of Section 1782.

Third, Snyder's limited allegations against Comstock are inaccurate. As explained in the Declaration of Jubal Thompson, Comstock's Executive Vice President and General Counsel ("Thompson Declaration"), Respondent does not own either of the buildings at issue and does not serve as the property manager for either of the buildings at issue. But more importantly, Snyder's allegations that Blair receives a discount appears intentionally misleading as all Washington Football Team players and staff who reside or have resided at BLVD Reston Station and BLVD Loudoun Station, including its current Head Coach Ron Rivera, receive rental benefits (like the waiver of application fees)—not because there is a secret financial benefactor—but because of specific requests made by the Washington Football Team and a long standing informal policy of Mr. Schar offering BLVD Reston Station and BLVD Loudoun Station to Washington Football Team players and staff at the request of or as an accommodation to Snyder.

Fourth, one of Comstock's independent directors, Norman Chirite, who owed Comstock fiduciary duties (including duties of loyalty and confidentiality), abruptly resigned just five days before Snyder initiated this action. Chirite, who is now currently employed by Snyder, is the former Managing Director of Red Zone Capital Management and the former Executive Vice President and General Counsel of the Washington Football Team. His abrupt resignation indicates a conflict far beyond a simple nonparty discovery request.

Snyder is not entitled to discovery from Comstock, regardless of whether his request is based on speculation or an improper purpose.

**Relevant Background**

**I.    Snyder files the India Action on August 7, 2020 for defamation based on several Internet articles and seeks an order directing Defendants to disclose who hired them and where they obtained information**

1. Snyder alleges that he has "asserted a claim for defamation" in India against several Indian entities involved in the publication of Internet articles that "falsely accuse him of a broad array of acts of criminal sexual misconduct." Docket No. 1 ¶¶ 16, 20.

2. Snyder attaches a copy of the charging document. *See* Docket No. 1-9. Among the defendants in the India Action are the publishers of the Internet articles, their owners, their writers, and all others who caused the article to be published. *Id.*

3. Snyder seeks relief in the India Action including: "an order directing the Defendants to disclose the details as to who had hired Defendants to publish the stories and from where they had obtained information qua the said impugned articles …." Docket No. 1-9 ¶ 45(f).

**II.    Snyder circumvents the India Action by filing here on August 10, 2020**

4. Rather than try to prevail in India, Snyder filed the instant action in this Court because, "upon information and belief," Snyder alleges that "Blair either furnished, or procured for, the defendants in the India Action false and unsubstantiated claims …." Docket No. 1 ¶ 24.

5. The limited bases for Snyder's "information and belief" appear to be:

   a. Blair "left on bad terms" (*id.* ¶ 31);

   b. Blair has "financial difficulties" because "[h]er wages have been garnished, … she has a substantial history of judgments and liens … and she has been evicted several times" (*id.* ¶¶ 33-34); and

   c. Blair "has stated that she received discounted rent between 2015 and at least late 2017 at two buildings owned by Comstock," that "since 2018, she has paid $2,100 a month in rent," and that "[h]er ability to afford this monthly

3

          rent seems highly questionable ….." *Id.* ¶ 34.

6.     Snyder also vaguely references phone calls between Blair and other Washington Football Team employees in which Snyder alleges "Blair had been asked about her contacts on the [Washington Football] Team" and an article would be published in the *Washington Post* that "would 'not [be] good for Dan.'" *Id.* ¶¶ 35-36 (second alteration in original).

7.     Snyder alleges that the *Washington Post* did, in fact, publish articles, including one on July 5, stating "minority owners of the [Washington Football] Team were looking to sell their stakes" and were "not happy being a partner" of Snyder (*id.* ¶ 37), and one on July 16, "alleging instances of sexual harassment against [Washington Football] Team employees" (*id.* ¶ 43).

8.     Snyder alleges that the defendants in the India Action also published at least one of the "Defamatory Articles" on July 16, 2020. *Id.* ¶ 43.

9.     Snyder alleges that Blair "told at least the employees of the [Washington Football] Team and Petitioner discussed herein that she was in contact with and working in coordination with a third party—not a journalist, but rather someone well known to each of the involved persons—and that both that third party and Blair were involved in the preparation of one or more articles expected to be harmful to Petitioner." *Id.* ¶ 45.

10.     Snyder alleges that Blair exhibits "knowledge of upcoming, non-public events in other contexts." *Id.* ¶ 47. Blair allegedly "told a [Washington Football] Team employee who interacts with Petitioner frequently that she had been in contact with the Federal Bureau of Investigation about another [Washington Football] Team employee" and that later that "employee was arrested by the FBI." *Id.*

### III.   Snyder's two limited allegations about Comstock are inaccurate

11.     The following two allegations are the sum total that Snyder provides to justify serving subpoenas on Comstock: (1) Blair lived in two buildings "owned by Comstock"; and (2)

4

Blair received discounted rent. Docket No. 1 ¶¶ 8, 34.

12. Each allegation is inaccurate. *First,* as explained in the Thompson Declaration, Comstock does not own either of the buildings at issue, BLVD Reston Station or BLVD Loudoun Station. Thompson Decl. ¶¶ 11, 13, 31. Each building is owned by a single asset entity and managed by an affiliate of Comstock. *Id.*

13. Snyder knows or should know that Comstock does not own these buildings and is fully aware that it has been commonplace for players, coaches, and staff members of the Washington Football Team to occupy apartments at BLVD Reston Station and BLVD Loudoun Station for years. *Id.* ¶ 29.

14. In fact, the Washington Football Team rented one unit at BLVD Reston Station for the Washington Football Team's head coach. *Id.* ¶ 30. This unit was personally inspected by Snyder's wife, Tanya Snyder, prior to the coach's occupation of the unit.

15. *Second*, although Snyder suggests that Blair received a special discount, Blair received the same discounts provided to Washington Football Team coaches, players, and staff members by virtue of her association with Snyder and the Washington Football Team. *Id.* ¶ 29. These facts ought to be known to Snyder given his position with the Washington Football Team and the Washington Football Team's employment of other tenants at the buildings.

**IV.   There are other indicia that Snyder is pursuing discovery for purposes other than the India Action**

16. *First*, Snyder recently hired away one of Comstock's special independent directors, Norman Chirite, a former employee of the Washington Football Team. Chirite served on Comstock's Board of Directors and had Independent Director responsibilities. Thompson Decl. ¶ 27. Chirite acquired substantial Confidential Information during his tenure. *See* Letter to N. Chirite dated August 19, 2020 (attached as Exhibit 7 to the Thompson Declaration). Chirite abruptly

5

resigned from Comstock two days before Snyder filed the India Action. Thompson Decl. ¶ 27.

17. Given the timing of Chirite's resignation, the lack of detail provided, and the abrupt nature of the departure after fourteen years serving on Comstock's Board of Directors, Comstock believes that Snyder's motives in filing this action influenced Chirite's resignation and its timing—and it reflects that Snyder's petition against Comstock is far more than a request for discovery for use in a foreign proceeding. *Id.* ¶ 28. Comstock is implementing all measures at its disposal to ensure that Chirite complies with his continuing fiduciary and contractual duties to Comstock, including to protect Comstock's valuable and confidential information from Snyder. Thompson Decl. Ex. 7.

18. *Second,* Snyder hired Virginia co-counsel, Reed Smith LLP (Reed Smith) to handle this matter locally. Reed Smith is long time counsel to Comstock and its affiliated companies for well over a decade and Comstock does not believe that Snyder's selection of one of Comstock's longest tenured law firms was coincidental. Reed Smith has subsequently moved to withdraw as counsel.

19. *Third*, Snyder's lead counsel, Tacopina (also on the papers in this 1782 action), has actively encouraged a connection between this action and Washington Football Team minority owner Schar:

> Monday's filing appears to mark an intensification in an ongoing dispute between Snyder and three minority owners of the [Washington Football] team over the franchise's direction. While his name is not mentioned in the filing, Dwight Schar, one of those minority owners seeking to sell his share of the [Washington Football] team, is the father-in-law of Comstock chief executive Christopher Clemente....
>
> ***
>
> Tacopina declined to answer when asked whether Dwight Schar is one of the people he believes financed the alleged online false information campaign.

6

> "We want to be able to depose Mary Ellen Blair, and get documents … before we go mentioning anyone by name. … But it's just a matter of time before this house of cards comes down," he said.

Will Hobson, *Daniel Snyder, in legal filing, accuses former team employee of spreading false stories*, Wash. Post, Aug. 10, 2020, https://www.washingtonpost.com/sports/2020/08/10/daniel-snyder-legal-filing-accuses-former-team-employee-spreading-false-stories/ (attached as **Exhibit 2**); *see also* Ken Belson & Katherine Rosman, *Washington N.F.L. Team Owner Files Claims Hinting at a Conspiracy*, N.Y. Times, updated Aug. 12, 2020, https://www.nytimes.com/2020/08/10/sports/football/washington-nfl-snyder-lawsuit.html (attached as **Exhibit 3)** (containing the same false allegation).

20. Snyder's counsel pointed towards these articles during an interview on August 14, 2020. Tacopina made the following statements:

> JP FINLAY: This is major…. [A]nd I'm not a legal mind. So, forgive me if my questions are elementary. ***Does any of this have anything to do with the 40% of the [Washington Football] team that's up for sale?***
>
> JOE TACOPINA: ***You know, there's, again, there's, I think common sense will sort of play out. I think the evidence in this case will present us with who's behind this.… But, you know, I read some articles today in various publications that sort of make that connection.*** That's, you know, any journalist is free to do that, I think. You know, they're using whatever common sense they want to apply, but I'm not going to do [that] at [this] time. Again, this is—the purpose of this is the first step in this legal action to try to uncover information as to who's behind this.

Exhibit 1 at 7:20-8:17 (emphasis added).

21. ***Fourth***, Snyder's counsel conceded that the true purpose of the 1782 action in this Court is not to assist the India Action but instead to support a separate action in the United States:

> ***JP FINLAY: What's your goal with this thing? The goal is not to prosecute in India, right? I imagine you want everything to happen here in the old US of A?***

7

> JOE TACOPINA: We are -- we did sue that company in India. That's for sure. **_But, yes_**, here's our goal …. The goal is to ensure that the full weight of the law comes down heavily on those responsible ….

*Id.* at 13:1-11(emphasis added).

## Legal Standard

"A [S]ection 1782 applicant must satisfy three mandatory factors by demonstrating that (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *In re FIMI-Finanziaria Immobiliare Italia S.R.L.*, 19-mc-584 (PKC), 2020 WL 4474839, at *2 (S.D.N.Y. Aug. 3, 2020) (second alteration in original) (internal quotation marks omitted) (denying application).

If the applicant satisfies the mandatory factors, the district court then weighs four factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), to determine whether discovery should be permitted. These factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) "unduly intrusive or burdensome requests may be rejected or trimmed." 542 U.S. at 264-65.

If an application for a subpoena under 28 U.S.C. § 1782 is granted, a respondent may challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45, and may also seek a protective order under Rule 26. *See In re Edelman*, 295 F.3d 171, 178-79,

181 (2d Cir. 2002) (explaining that restrictions and protections of Rules 45 and 26 apply to subpoenas issued under 28 U.S.C. § 1782, and remanding for district court to consider whether Rule 45 required that the subpoena be quashed); *see also* 28 U.S.C. § 1782(a) (providing that discovery shall be provided "in accordance with the Federal Rules of Civil Procedure").

Under Rule 45, "the court for the district where compliance is required must quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). Similarly, Rule 26 provides that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1).

**Argument**

**I.     The Court should deny the petition to serve subpoenas on Comstock and issue a protective order because Snyder cannot satisfy the "for use" statutory requirement because allowing the discovery would circumvent the India Action**

"[A] request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement." *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018) (affirming denial of discovery as irrelevant).

Here, Snyder cannot satisfy the statutory "for use" requirement because Snyder is already seeking this information as part of the ultimate relief in the India Action. Specifically, Snyder seeks an "order directing the Defendants to disclose the details as to who had hired Defendants to publish the stories and from where they had obtained information." Docket No. 1-9 ¶ 45(f). Snyder cannot leverage Section 1782 for the discovery he seeks because that would bypass the requirement that Snyder first prevail in the India Action. Snyder's petition is unaccompanied by a declaration from an expert on Indian law explaining whether Snyder is entitled to discovery in India and whether he can receive this information in that forum.

**II.     In the alternative, the Court should deny the petition and issue a protective order because Snyder's subpoenas are pure speculation and accompanied by indicia of an improper purpose**

"[E]ven when a discovery request is sufficiently relevant to be deemed 'for use' in a foreign proceeding, there is nothing that prevents district courts from considering relevancy under the discretionary *Intel* factors …. Where the information sought is only marginally relevant, the district court may decide to exercise its discretion to exclude the evidence because other concerns outweigh the need for the discovery." *In re Schlich*, 893 F.3d at 52. For example, "a district court should deny an Application under Section 1782 if it is 'made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials ... in toto, just as it can if discovery was sought in bad faith in domestic litigation.'" *Green Dev. Corp. S.A. De C.V. v. Zamora*, CASE NO. 15-21594-MC-GOODMAN, 2016 WL 2745844, at *3 (S.D. Fla. May 10, 2016) (alteration in original). And the U.S. Supreme Court has made clear that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

Under Rule 45, "[a] party may seek to quash or modify a subpoena on grounds of irrelevance or overbreadth, even though irrelevance and overbreadth are not explicitly listed as grounds to quash in Rule 26(c)(1) or Rule 45(c)(1), because either irrelevance or overbreadth necessarily establishes undue burden." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, Civil Action No. 3:16-MC-1, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016). Rule 26(c)(1) also permits protective orders to protect a party from such undue burden.

**A.     The subpoenas are a speculative fishing expedition**

Snyder's arguments in support of the Comstock subpoenas are surprisingly speculative. For example, Snyder recites that Blair left on bad terms and experienced financial difficulties. Snyder then jumps to the speculative conclusion that it is "highly questionable" whether she can afford $2,100 a month in rent. Docket No. 1 ¶ 34. He then jumps to the more speculative conclusion

that there must be a financial benefactor paying her rent. He then jumps to the more speculative conclusion that this financial benefactor was involved in creating the defamatory articles at issue in the India Action.

Snyder even goes so far as to argue that Blair's statement to other Washington Football Team employees about a *Washington Post* article should be construed to mean that Blair knew about the articles at issue ***in India***. Regardless of whether this speculation can justify discovery from Blair, it is too far to jump from speculation against Blair to speculation against Blair's building owner, to speculation against her property management company, and, ultimately, speculation about Comstock.

Courts do not permit such fishing expeditions under the Rules. *See Cook v. Howard*, 484 F. App'x 805, 813 (4th Cir. 2012) ("While the Appellants assert that these materials may have led to discovery of admissible evidence, they present no intelligible explanation of how that is so, nor can we detect any; the requests have every indicia of the quintessential fishing expedition."); *EEOC v. Dolgencorp, LLC*, Civil No. SAG-18-2956, 2019 U.S. Dist. LEXIS 220340, at *5 (D. Md. Dec. 23, 2019) ("Because the subpoena is a quintessential 'fishing expedition,' I will grant the requested protective order and quash the subpoena.").

Nor do courts permit such irrelevant and speculative discovery under 28 U.S.C. § 1782. *See In re Green Dev. Corp. S.A. de C.V.*, Civil No. WDQ-15-2985, 2015 WL 10319091 (D. Md. Oct. 1, 2015) (recommending denial of petition under 28 U.S.C. § 1782, where the petitioner sought information from a party that the petitioner alleged had sent a defamatory article to the Honduras Supreme Court, and holding that discovery into the subpoenaed party's allegedly improper motive was not relevant to the pending proceeding before the Honduran court), *report and recommendation approved* 2016 WL 640791 (D. Md. Feb. 18, 2016) ("It is sheer speculation

11

that McNicholas was the source, or would have any knowledge of the source, of the copy of his article allegedly provided to a judge or judges on the Honduran Supreme Court."); *Zamora*, 2016 WL 2745844, at *1, 7 (granting motion to quash where "the rationale proffered for the discovery is speculative").

### B. The subpoenas seek information irrelevant to the India Action

Snyder seeks eight categories of documents from Comstock, including: Blair's tenancy at any property managed by Comstock or any other affiliated property management company; Blair's lease applications, credit applications, and lease agreements for any units she currently rents or previously has rented at BLVD Reston Station or BLVD Loudoun Station; any guarantor on Blair's leases at BLVD Reston Station or BLVD Loudoun Station; Blair's rent and security payments for any units in BLVD Reston Station or BLVD Loudoun Station; the fair rental value of any unit that Blair currently is renting or previously has rented at BLVD Reston Station or BLVD Loudoun Station; and any lease incentives given to Blair in connection with her leasing units at BLVD Reston Station or BLVD Loudoun Station. *See* Docket No. 1-5. Snyder further seeks all documents and communications "between [Comstock] and any third parties concerning Blair." *Id.*

Snyder similarly provides a "non-exhaustive list of representative topics" on which Snyder seeks to depose a representative of Comstock, including: Blair's tenancy at BLVD Reston Station and BLVD Loudoun Station; Blair's rent payments; Blair's lease and credit applications for any apartment at BLVD Reston Station or BLVD Loudoun Station; any guarantor for Blair's apartments at BLVD Reston Station or BLVD Loudoun Station; Blair's tenancy at any other buildings or units managed by Comstock; and any financial incentives granted to Blair in connection with her leasing units owned, managed or operated by Comstock. *See* Docket No. 1-6.

None of the above information is relevant to the India Action. There, Snyder is suing

12

various parties in India for publishing an allegedly defamatory article about Snyder. Docket No. 1-9 ¶¶ 16-29. The issues concern whether the statements are false and defamatory, whether the defendants knew or had reason to know that those statements were false, and whether those statements damaged Snyder. Blair's residence at BLVD Reston Station or BLVD Loudoun Station and the information about her tenancy that Snyder seeks has no bearing on those issues.

### C. The subpoenas are overbroad

Snyder seeks all documents and communications concerning "Ms. Blair's tenancy at any property managed by Comstock or any other affiliated property management company," as well as all documents and communications "between [Comstock] and any third parties concerning Ms. Blair." Docket No. 1-5 at Requests 1 and 5. But these broad categories of documents far exceed even Snyder's relevance argument. Similarly, Snyder's subpoena for deposition testimony seeks to leave open the possibility of questioning a Comstock representative on any topic imaginable, as the subpoena merely provides a "***non-exhaustive*** list of representative topics." Docket No. 1-6 (emphasis added). Thus, the Court should deny the petition because Snyder's subpoenas are overbroad. *See In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *7-8 (quashing subpoena).

### D. The subpoenas bear indicia of an improper purpose

Under both *Green* and Rule 45, the Court may quash the subpoena and issue a protective order to protect a nonparty from harassment. Here, Snyder's focus on Comstock is accompanied by indicia of an improper purpose, including the resignation of Norman Chirite just days before filing this action, the hiring of Comstock's longest tenured law firm, the blatant misstatements and focus on Comstock despite Snyder's actual knowledge of the building owner, and the source of rental discounts evidenced by the tenancy of many Washington Football Team players and staff over the years—the most recent and notable one being the head coach of the Washington Football

Team, whose BLVD Reston Station unit was walked through and accepted by Tanya Snyder. Finally, Snyder's attorney answered "yes" during a podcast when asked whether his goal was to initiate U.S. based litigation. Exhibit 1 at 13:1-11.

**III. In the alternative, the Court should deny the Petition and issue a protective order because any information can be obtained from other, more convenient sources**

Rule 26 provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed ... if it determines that ... the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). "Fed. R. Civ. P. 45's rules for quashing or modifying third-party subpoenas are subject to the general relevance discovery limitations of Rule 26. Thus, the Court must quash or modify a subpoena if the information sought is obtainable from another, more convenient source." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *8 (citations omitted); *see also* Fed. R. Civ. P. 45 (d)(2)(B)(ii) (stating that courts "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance"). Similarly, Rule 26(c)(1) provides for protective orders to protect a party from undue burden.

Here, Snyder claims that the documents and information he seeks would demonstrate connections to MEAWW, which Snyder claims will bear on the issues in the India Action. Docket No. 1 ¶ 49. But documents regarding connections to MEAWW are in the possession of MEAWW itself and the parties responsible for publishing the articles: *i.e.*, the defendants in the India Action. "There is no reason to burden a third party with discovery when the opposing party has all of the information requested." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *8 (quashing subpoena and issuing protective order).

*In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.* is instructive. There,

Bona Fide Conglomerate, Inc. served subpoenas on ThompsonMcMullan, P.C. seeking documents for use in Bona Fide's suit against SourceAmerica in the Southern District of California. *Id.* at *1-2. Bona Fide sought documents related to a previous lawsuit brought by SourceAmerica, in which ThompsonMcMullan represented Bona Fide's general counsel. *Id.* at *2-3. The court agreed with ThompsonMcMullen that all such documents could be sought from SourceAmerica, who was a party to the Southern District of California case, and quashed the subpoena. *Id.* at *8-9. The court also rejected Bona Fide's claims that it had "serious concerns about its ability to obtain accurate, unfiltered information about the events and disclosures at issue" from SourceAmerica, concluding that Bona Fide could seek relief from the Southern District of California if SourceAmerica did not comply with its discovery obligations. *Id.* The Court also granted a protective order because even a more narrowly tailored subpoena would be inappropriate for the same reasons. *Id.* at *9.

Further, Snyder's lawyer, Tacopina, has suggested to the public that Snyder already has the information he seeks. Exhibit 1 at 14:10-18 ("You know, a lot of this was real easy to find because people came to us. People came to Dan and said, you know, 'I was approached and here's what they said.' And these people were willing to give under oath sworn affidavits under the penalties of perjury that what was said to them was truthful. Other individuals recorded conversations. So, as I said, you know, we sit here pretty confident about where this is going."); *id.* at 7:16-19 ("We have sworn affidavits to back that up, and we have audio tape recordings to back that up. So, you know, we wouldn't be making these filings if we weren't rock solid in our proof."). If Snyder is "rock solid" then he has no need to engage in a fishing expedition.

Finally, even if Snyder establishes an entitlement to these documents notwithstanding Comstock's arguments, all such documents are obtainable from Blair.

### IV.   Comstock does not own or manage the buildings at issue

The Court should deny Snyder's application for issuance of the subpoenas for the

independent reason that Comstock affiliates, not Respondent Comstock, own and manage the buildings at issue. Thompson Decl. ¶¶ 11, 13, 31.

## Conclusion

Snyder may be entitled to the relief he seeks in India. But Snyder cannot use Section 1782 proceedings to bypass that proceeding. Snyder's speculative arguments—coupled with public statements by his attorney concerning his motive for seeking discovery—prevent Snyder from satisfying the "for use" requirement of Section 1782. Snyder's promotional speculation and use of this Court for public relations purposes does not justify seeking discovery from Comstock under the Federal Rules in any event.

Dated: August 21, 2020

Respectfully submitted,

/s/_____
Nicholas M. DePalma (VSB 72886)
Christian R. Schreiber (VSB 89544)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
Tel: (703) 905-1455
Fax: (703) 821-8949
nmdepalma@venable.com
crschreiber@venable.com

*Counsel for Comstock Holding Companies, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on this 21st day of August 2020, I caused a copy of the foregoing to be filed electronically with the Court's CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record authorized to receive notice of such filing, including:

>Brittany Davidson
>REED SMITH LLP
>7900 Tysons One Place, Suite 500
>McLean, VA 22102
>Tel: (703) 641-4200
>Email: bdavidson@reedsmith.com
>
>Rizwan A. Qureshi
>REED SMITH LLP
>1301 K Street NW
>Suite 1000, East Tower
>Washington, DC 20005
>Tel: (202) 414-9200
>Email: rqureshi@reedsmith.com
>
>Joseph Tacopina (*subject to admission pro hac vice*)
>TACOPINA, SEIGEL & DEOREO
>275 Madison Avenue
>New York, New York 10016
>Tel: (212) 227-8877
>Email: jtacopina@tacopinalaw.com
>
>*Counsel for Petitioner*
>
>/s/_____
>Nicholas M. DePalma (VSB 72886)
>Christian R. Schreiber (VSB 89544)
>VENABLE LLP
>8010 Towers Crescent Drive, Suite 300
>Tysons, VA 22182
>Tel: (703) 905-1455
>Fax: (703) 821-8949
>nmdepalma@venable.com
>crschreiber@venable.com
>
>*Counsel for Comstock Holding Companies, Inc.*