# Exhibit 1



James C. Brennan
Direct Phone: +1 703 641 4252
Email: jbrennan@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA 22102-5979
Tel +1 703 641 4200
Fax +1 703 641 4340
reedsmith.com

October 25, 2016

**VIA EMAIL (plondon@comstockpartnerslc.com)**

J. Phillip London, Esq.
General Counsel
Comstock Development Services, LC
1886 Metro Center Drive, #400
Reston, Virginia 20190-5235

Re:  **Engagement for Representation – Comstock Development Services, LC**

Dear Phil:

This letter will confirm Reed Smith's representation of Comstock Development Services, LC ("Comstock") in connection with the legal review of marketing materials for various development projects owned and operated by Comstock, or its affiliates, and other development matters ("Engagement").

Our representation of Comstock is subject to both parties' agreement as set forth in this letter and the enclosed Standard Terms and Conditions of Engagement ("Standard Terms").

As indicated, unless otherwise specified in this engagement letter, the terms of the Engagement will be in accordance with our Firm's enclosed Standard Terms.

My hourly rate will be consistent with the other Comstock affiliated matters, and the rates for other Reed Smith partners, and associates who will work on the Engagement, will be set for the various engagements. These rates are subject to periodic adjustment as outlined in the Standard Terms. Our policy on expenses, including those for which it is Comstock's initial responsibility to pay, is contained in the Standard Terms.

If the terms of this engagement letter and the Standard Terms meet with your approval, please sign below and return the enclosed copy of same, keeping the second copy for your files.

Very truly yours,

James C. Brennan

JCB:jlb
Enclosure

ABU DHABI ♦ ATHENS ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MUNICH ♦ NEW YORK ♦ PARIS
PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-129038748.1

J. Phillip London, Esq.
October 25, 2016
Page 2

ReedSmith

Accepted By:

COMSTOCK DEVELOPMENT SERVICES, LC

By: _____

Title: SVP + General Counsel

Date: 1-5-17

# Reed Smith LLP
## Standard Terms and Conditions of Engagement

The following standard terms and conditions of engagement are incorporated in and made a part of the engagement letter for each matter that Reed Smith LLP ("Reed Smith" or "Firm") is engaged to represent "Client," as defined in the engagement letter. To the extent Client provides the Firm with different, supplemental, or alternative terms, the terms provided hereunder shall prevail unless Firm specifically agrees otherwise in writing.

***Fees.*** Reed Smith will bill Client on a monthly basis unless otherwise specified in the engagement letter for a specific matter. Each bill will provide a detailed accounting of services rendered and/or recorded during the immediately preceding month. The "services rendered" will be broken down into two separate components: (i) legal services provided by our attorneys, paralegals and other professionals, and (ii) reimbursable costs and expenses incurred by Reed Smith in connection with its representation of Client. With respect to legal services, Client will be billed on an hourly basis (unless otherwise specified) at rates which will vary with the nature of the matter, as well as with the experience and skill of the attorney, paralegal or professional rendering the services. Please note that our regular hourly rates are typically adjusted as of January 1 of each year and may, from time to time, be adjusted at other times during the year.

***Reimbursable Costs.*** The second component of "services rendered" shown on our bill to Client will be a summary of expenses by category which includes: long distance telephone, postage, photocopy/scan/print, facsimile charges, secretarial and word processing overtime, etc. See table below:

| Costs & Expenses | |
|---|---|
| **Service** | **Charge** |
| Outgoing Faxes | ***From a fax machine:*** $1/p U.S./£1/p UK<br>***From a desktop:*** Long distance charges |
| Copy/Scan/Print | ***Black/White:*** 15¢/p U.S./£0.25/p UK<br>***Color:*** $1/p U.S./£1/p UK |
| Telephone | Actual long distance charges on Firm systems and on Firm or other calling cards |
| Courier/Overnight Services | Actual charges incurred |
| Postage | Actual charges incurred |
| Electronic Research | Actual charges incurred |
| In-House Video Conferencing | Actual cost of call plus $15 (£25)/hr for technical support |
| Third Party Conference Calls | Actual invoiced cost |
| Technology Support | Hourly rate for technician time plus all direct costs |
| Overtime | Actual charge incurred when overtime is warranted |
| Third Party Services such as: transcripts, title searches, title insurance, filing and recordation fees and taxes, and other transaction-related disbursements, such as expert witnesses and consultants and investigators. | Items over $1,000 are typically sent directly to client for payment. Otherwise, costs for such services are billed to clients at actual invoiced cost. |
| Data Hosting | Actual charges incurred |

While many expense costs are generally paid by the Firm and then charged to Client, it is our practice to forward invoices for significant filing fees or disbursements (e.g., $1,000 or higher) to Client for direct payment to the vendor. In addition, if substantial costs are to be advanced in connection with the matter, it is our practice to obtain a retainer from Client to cover such costs.

***Retainer.*** It is the Firm's policy to require an initial retainer before commencing legal services for a new client. The amount of the retainer is specified in the attached engagement letter. As monies become due for legal fees and expenses, those items will be deducted from the Retainer, with notice to you of those deductions. Of course, with respect to any other matters we may undertake on the Client's behalf, we may request an additional retainer that is reasonable in light of the anticipated scope of the task at hand.

Unless Client elects that the retainer (or other funds provided to the Firm in trust) to be placed in a separate account, applicable law may require the Firm to deposit retainers into an account from which interest generated from the account is used to provide legal services to the indigent or for other purposes that benefit the public and that are related to legal services. If Client desires Client's deposit to be placed in a trust account with interest payable to Client, please so advise on an Advance Deposit Form, along with Client's taxpayer identification number on a properly executed W-9 Form. Reed Smith's trust accounts are held in approved financial institutions, and bear interest at the bank's rates for this type of account. The choice of bank, however, is subject to change at our discretion.

***Payment.*** Unless otherwise specifically agreed in the engagement letter, we expect payment from Client within 30 days of the invoice date, as prompt and full payment for our services is vital to our ability to efficiently provide legal services to all clients. Client agrees to pay our invoice within 30 days of the bill date, unless otherwise specified in the letter.

***Interest on Overdue Accounts.*** Client further understands and agrees that if payment is not made within 30 days of the bill date, Client's account shall be considered past due, after which an interest charge will be added to the outstanding balance in an amount equal to .83% per month. We also reserve the right to discontinue services if our bills are not paid in a timely manner, and to seek payment for all outstanding and accrued fees and expenses.

***Term of Engagement.*** Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. If Client so requests, we will suggest possible successor counsel. If permission for withdrawal is required by a court, we will promptly apply for such permission, in accordance with local court rules, and Client agrees to engage successor counsel to represent Client.

***Information/Client Responsibilities.*** We will keep Client informed of the status of all matters and, as appropriate, will send Client copies of correspondence, pleadings and/or other relevant documents which we initiate and copies of correspondence, pleadings and/or other relevant documents we receive from others. Client agrees to cooperate fully with the Firm and to provide promptly all information known or available to Client relevant to the Firm's representation of Client's interests, including furnishing all documents requested by us.

***Termination and Conclusion of Attorney-Client Relationship.*** Unless previously terminated, our representation of the Client will terminate, and the attorney-client relationship shall be deemed concluded, after our completion of all matters for which we have represented Client. But no later than the date of the invoice under which the last matter was billed in full. The Firm expects full payment for any amounts owed at that time.

***Post-Engagement Matters.*** Client has engaged the Firm to provide legal services in connection with a specific matter as described in the engagement letter. After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact on the Client's future rights and liabilities. Unless Client engages the Firm to provide additional advice on issues arising from the matter, we have no continuing obligation to advise Client with respect to future developments.

***Deal Lists.*** The Firm reserves the right to use the Client's name and/or the descriptive elements of corporate finance transactions the Client has undertaken with our assistance, in deal lists

communicated to our existing or prospective clients or the media, unless Client instruct us otherwise.

***External Electronic Communication Authorization.*** The Firm may send documents or other information that is covered by the attorney-client or work product privileges using external electronic communication ("EC") (via the internet or other network). Client understands that EC is not an absolutely secure method of communication. Client acknowledges and accepts the risk and authorizes the Firm to use EC means to communicate with Client or others necessary to effectively represent the Client. If there are certain documents with respect to which the Client wishes to maintain absolute confidentiality, the Client must advise the Firm in writing not to send them via EC and the Firm will comply with Client's request.

***Internal Communications.*** There are occasions when lawyers in the Firm find it useful and helpful to discuss our professional obligations to clients with lawyers experienced in such matters. Accordingly, as part of our agreement concerning our representation of Client, Client agrees that if we determine in our own discretion during the course of the representation that it is either necessary or appropriate to consult with our Firm's Legal Department (either the Firm's in-house counsel or, if we choose, outside counsel) we have Client's consent to do so. Any such communications are and will be deemed to be communications protected by the Firm's attorney-client privilege, and our representation of Client shall not, thereby, waive any attorney-client privilege that the Firm may otherwise have protecting the confidentiality of our communications with counsel.

***Future Conflicts In Unrelated Matters.*** The Firm's ability to represent any and all clients is governed by the applicable rules of professional conduct, which include but are not limited to rules regarding conflicts of interest between multiple clients of a law firm or between a law firm and its clients (collectively, "the Conflicts Rules"). Except as we may have already disclosed, the Firm is not presently aware of a conflict created by the proposed representation of Client that would trigger the Conflicts Rules at this time. However, the nature and scope of the Firm's work for other clients may give rise to conflicts of interest in the future. The purpose of this section of the Standard Terms is to explain how the Firm proposes to resolve future conflicts issues so that the Client can decide whether or not to be represented by the Firm. In other words, the purpose of this section is to establish a waiver of future conflicts but to do so subject to the conditions and limitations noted herein.

The Scope of the Waiver

The Firm only requires Client's waiver for future work for other clients that is entirely factually and legally unrelated to the work we shall do for Client, but is adverse to Client or Client's interest. Thus, the Firm does not recognize that this waiver would allow it:

- at any time, to attack the work that the Firm performs for the Client;
- to affect the independence of the Firm concerning work that the Firm performs for the Client;
- at any time, to disclose or use adversely to the Client, or to place itself in a position to disclose or use, any confidential and nonpublic information of the Client;
- at any time, to allow lawyers [or nonlawyer staff] who work for the Client to simultaneously work adversely to the Client; or
- for so long as the Firm continues to represent the Client, to allege criminal conduct by the Client.

Outside of these limitations, the Firm is and will remain free to represent other clients adversely to the Client. In other words, we may represent other clients in negotiations, business transactions, litigation, alternative dispute resolution, administrative proceedings, discovery disputes, or other legal matters even if those matters are adverse to Client or Client's interests. For example, and solely by way of illustration, the Firm could represent another client in a contractual dispute against Client, including litigation, provided we did not advise Client concerning the contract in question or have confidential information of Client that bears directly on the aspect of the contract in dispute.

Although the Client may revoke this waiver as to future matters at any time, such revocation will not affect any matters undertaken by the Firm prior to receipt of notice by the Firm of the revocation. In addition, and to the extent permitted by the applicable rules of professional conduct, the Client must consent to the Firm's withdrawal from the Client's matters if withdrawal is necessary for the Firm to continue representing other clients. If the Firm does withdraw

from a matter, however, it will assist Client in transferring the matter to other counsel of Client's choice and will not bill Client for legal fees, expenses, or other charges arising from the need to assist successor counsel in coming up to speed.

<u>Considerations Relating to Client's Decision to Provide the Waiver</u>

Having made you aware of this conflicts waiver and its potential implications for you, we ask that you state exception to agreeing to this waiver if you have any unanswered or unaddressed reservations or concerns. We also strongly encourage you to discuss this waiver with independent counsel of your choice.

As we have already explained, there are questions that Client should address before a decision to agree to waive future conflicts is made:

- Is there a material risk of adverse disclosure or use of confidential client information?
- Is there a material risk that the Firm will be less zealous or eager when representing the Client because of other adverse representations?
- Is the Client ready, willing, and able to live by the commitment this waiver requires in the future?

As to the first two questions, we believe that any risk to the Client is minimal to nonexistent in light of the protections and limitations contained in this and other sections of the Standard Terms as well as the rules of professional conduct that the Firm is bound by. As to the final question, that is necessarily the Client's choice and not ours. However, the Client's agreement to provide this waiver is fundamental to and necessary for the Firm's agreement to represent the Client.

***Clients with Competing Interests.*** Some of our current or future clients are likely to operate in the same industry or sector as you and may have interests which are adverse to you. You accept that we may act for such other clients. We will continue to have rigorous procedures to identify conflicts and ensure the confidentiality of the information you or other clients provide to us. Where you request us to act for you on a matter where you are one of a number of parties competing for the same asset (for example, in a tender or corporate auction or in an insolvency situation), you agree that we may act for other parties on the same matter provided we comply with applicable ethical rules and are able to act in the best interests of each client.

***Insurance or Third Party Billing.*** Client may wish to determine whether Client has insurance to cover its exposure concerning matters for which Reed Smith shall serve as Client's counsel. Absent an express and specific requirement in the Scope of Engagement above identifying Reed Smith as responsible, Client shall be responsible for (1) determining whether Client has insurance coverage associated with the Scope of Engagement and (2) for tendering any claim or suit to Client's insurer. It is possible that Client or Reed Smith may secure the agreement of an insurance company that Reed Smith may act as Client's counsel. Some insurance companies impose restrictions on the type, amount of or hourly rate for legal services for which they will pay and may further refuse reimbursement for various cost items. In addition, some insurance companies may unilaterally impose other restrictions which are different from the terms provided hereunder. While Reed Smith will, of course, work cooperatively with any insurance company defending Client, and make every effort to minimize the expense not absorbed by Client's insurance company, Reed Smith's engagement agreement is with Client, and Client agrees to pay promptly Reed Smith's invoices, and Client will seek such reimbursement from the insurance company as may be appropriate. In the event a billing dispute arises between Client and the insurance carrier, Reed Smith will advise Client and, if Client wishes, Reed Smith will represent Client in connection with that dispute, at Reed Smith's standard hourly rates.

Additionally, upon request, we will forward or address our invoices to a third party designated by Client, other than an insurance company. Client agrees that in so requesting, Client waives any conflict of interest arising under applicable law which requires Client's consent for us to accept payment of legal fees from a party other than the represented client. We commit to Client that our representation of Client shall not be made less independent through the acceptance of fees for our services to Client from a party other than Client.

***Matters Involving Patents.*** We do not offer the service of annuity/maintenance fee payments on pending and granted patents. Therefore, Client is required to either contract with a direct-pay firm for payment of annuities/maintenance fees or undertake

4

payment of such fees on Client's own behalf. If requested, we can assist Client in identifying such a firm but Client agrees to inform us of its election in this regard. Further, Client agrees that if Client does not report to us how annuity/maintenance fee payments will be made for Client's pending and granted patents, that we may conclude, and therefore may rely upon, that Client has arranged to have the fees paid by some means other than through us.

***Responses to Audit Letters.*** If Client engages an accountant to audit Client's financial statements, it is likely the accountant will request, during the audit, that Reed Smith provide a written description of all pending or threatened claims for lawsuits to which Reed Smith has given substantive attention on Client's behalf. This request is typically a standardized letter provided by the accountant which Client is requested to send to Reed Smith. Minimum fees for responses to audit letters will be billed at $550 for non-profit entities, $1050 for non-public, for-profit entities, and $1,550 for public entities. Client agrees that these fixed fees are reasonable in view of the time Reed Smith shall spend in preparing letters to Client's auditor. However, if more than three hours of time is necessary, we will charge our regular hourly rates.

***Disposition of Records.*** Reed Smith is not obligated to keep files/records related to a matter after that matter is finished unless required to do so by operation of law. Reed Smith may destroy any file materials (hard copy or electronic form) after termination of the matter involved, unless Client requests those materials within thirty days of notification of Reed Smith's intent to destroy them.

***Exclusion of Owners, Subsidiaries, Officers, Directors and Employees.*** Our client for purposes of our representation is Client as specifically identified in the engagement letter for the matter, and not, unless expressly named in the engagement letter, any "Affiliates" of Client. "Affiliates" of Client that are excluded from the meaning of Client include, but are not limited to (a) shareholders or constituent partners, members, or other equity stakeholders, (b) parent, sister, brother and subsidiary companies, (c) joint ventures, limited partnerships, general partnerships, limited liability companies or other unincorporated entities in which Client may have an ownership interest, (d) officers, (e) directors, (f) employees, or (g) any other party related by family relationship, management position or capacity, contractual, cross-

ownership or otherwise. ***Should Client feel it necessary and appropriate to change the identified client or to include any of the foregoing within the definition of "Client" for a particular matter, please discuss this matter with us before engaging us.*** Our objective in this policy is to avoid situations where (1) true clients or parties in interest being represented by our Firm find themselves being sued or in an adverse position to another client of our Firm because our records did not properly identify the client, or (2) after undertaking our representation of Client (or another client), and investing considerable time and dollars on Client's behalf, we are forced to withdraw from a representation because of a conflict which could have been identified earlier with accurate client identification at the inception of our attorney client relationship.

**Virginia Arbitration Clause.**

By signing this Agreement, Client agrees that, in the event of any dispute arising out of or relating to this Agreement, the relationship, or the services performed (including, but not limited to, disputes regarding the amount of, or payment or non-payment of attorneys' fees or expenses and those alleging negligence, breach of contract, malpractice of any type, no matter how denominated, breach of fiduciary duty, fraud, disgorgement, or any claim based upon a statute), such disputes shall be resolved by submission to binding arbitration as agreed herein.

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules [including the Emergency Interim Relief Procedures], and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any arbitration proceeding shall be brought in Virginia, unless the parties mutually agree in writing to another forum. A single qualified arbitrator will be chosen to serve under the then effective rules of the AAA, unless the parties mutually agree in writing to three arbitrators. The decision of the arbitrator(s) shall be final, binding, and not subject to judicial review.

The parties agree that arbitration can be compelled by a court located in Virginia, that arbitration cannot be avoided by the filing of any other lawsuit or proceeding, and that provisional or ancillary remedies can be sought without waiver of arbitration rights. The

parties intend that this Agreement to arbitrate be valid, enforceable and irrevocable.

Client has read this Agreement and understands the right to have this arbitration agreement reviewed by other counsel in order to advise if it is in Client's best interest.

v-2015-2