IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

*In re* Application of Daniel Snyder
for an Order Directing Discovery
from Mary Ellen Blair and
Comstock Holding Companies, Inc.
Pursuant to 28 U.S.C. § 1782

Misc. Action No. 1:20-mc-00023

# MEMORANDUM IN SUPPORT OF
# MOTION FOR LIMITED INTERVENTION BY NORMAN CHIRITE

Norman Chirite was not a party to this litigation, but respondent Comstock Holding Companies, Inc. ("Comstock" or "Respondent") has dragged him into it through baseless and malicious attacks on Mr. Chirite's conduct in business and professional matters. These attacks are impertinent and immaterial to this case. Mr. Chirite seeks to intervene as of right under Federal Rule of Civil Procedure 24(a) and permissively under Rule 24(b) for the limited purpose of (a) moving to strike these accusations from Respondent's pleadings; or alternatively, (b) supplementing the record with information necessary to mitigate the harmful consequences of Respondent's accusations.

## BACKGROUND

In its opposition papers in this proceeding under 28 U.S.C. § 1782, Comstock asserts that Mr. Chirite breached his fiduciary duties as a former Director of Comstock, his ethical duties as an attorney, and his obligations under an agreement to serve as a Special Independent Director of Comstock.[1] Comstock claims that it "is implementing all measures at its disposal to ensure that

---

[1] *See* Respondent's Opposition Brief to Application for an Order Directing Discovery From Comstock Holding Companies, Inc. (Dkt. No. 6) at 2 (second full paragraph), 5-6 (¶¶ 16-17), 13 ("the resignation of Norman Chirite just days before filing this action"); Declaration of

Chirite complies with his continuing fiduciary and contractual duties to Comstock, including to protect Comstock's valuable and confidential information from [Petitioner Daniel] Snyder." Opp. at 6. The supporting declaration includes similar innuendo suggesting that Mr. Chirite is violating his fiduciary duties (Decl. ¶¶ 27-28). Comstock attached to the Declaration a letter headed "Demand for further assurances" (the "Letter") that it had sent to Mr. Chirite, which made inappropriate and intrusive demands based on what the Letter described as Mr. Chirite's "apparent lack of compliance with [his] continuing fiduciary duties and [his] confidentiality restrictions." Decl. Ex. 7 at 2.

Mr. Chirite found the Letter at night, Scotch-taped to the front door of his home, facing outward, with no envelope. Comstock inexplicably used this bizarre (and implicitly threatening) means of delivery instead of using the email address that Comstock had used for years to communicate with Mr. Chirite when he served as a member of Comstock's Board of Directors, or simply waiting a few hours for an overnight mail delivery. Although the Letter set an arbitrary deadline for Mr. Chirite to respond by Monday, August 24, Comstock went ahead and *publicly* filed the Letter in this proceeding on August 21, without affording Mr. Chirite the opportunity to respond to the Letter's inflammatory allegations. *See* Decl. Ex. 7.

The accusations Comstock has leveled against Mr. Chirite bear no meaningful relationship to the statutory prerequisites or discretionary factors for non-party discovery under 28 U.S.C. § 1782. Respondent, relying on nothing but bald speculation, insinuates that Mr. Chirite's "abrupt" resignation from Comstock's Board of Directors "two days before Snyder filed the India Action" (Opp. at 6), and his employment by Mr. Snyder, "indicates a conflict far beyond a simple nonparty

---

Jubal R. Thompson, Comstock's General Counsel (Dkt. No. 7; "Decl.") (¶¶ 27 and 28); Exhibit 7 to the Declaration of Mr. Thompson (Comstock letter to Mr. Chirite dated August 19, 2020).

discovery request" (*id.* at 2), and constitutes "indicia of an improper purpose" to petitioner's application (*id.* 13). These accusations are false and defamatory.

Mr. Chirite timely replied to Comstock's Letter on August 24, 2020 (the "Chirite Letter", attached hereto as Exhibit A), in accordance with Comstock's request. As the Chirite Letter demonstrates, Comstock's accusations are entirely unfounded. Indeed, it appears that the true purpose of the Letter, and particularly its precipitous public filing, is to attempt to intimidate or embarrass Mr. Chirite in a misguided attempt to assist Dwight Schar, the father-in-law and close business associate of Comstock's CEO Chris Clemente, in Mr. Schar's well-publicized dispute with the Washington Football Team and Mr. Snyder, the Team's principal owner. Ex. A at 2.

Mr. Chirite seeks to intervene for the limited purpose of moving to strike Comstock's accusations against him or, alternatively, to supplement the record in this proceeding by placing the Chirite Letter on the public docket.

As explained in greater detail in the Chirite Letter, the accusations and innuendo in Comstock's Letter are reckless and unsupportable:

*First*, Mr. Chirite has never used confidential Comstock information for any purpose other than in the discharge of his duties as a Comstock board member. He has never disclosed such information to Mr. Synder or the Washington Football Team. Nor has he breached any duties to Comstock – contractual, fiduciary, ethical or otherwise – while he served on Comstock's Board or after his resignation. Even if there were any factual or legal bases for Comstock's seeking "further assurances" – which there are not – the Chirite Letter provides such assurance.

*Second*, the reasons the Letter provides for its purported suspicions of misconduct are "the timing of Chirite's resignation, the lack of detail provided" beyond citing a "conflict," and "the abrupt nature of the departure." Opp. at 6 ¶ 17. These circumstances prove nothing. Mr. Chirite's

resignation was not abrupt. He advised Respondent's CEO, Chris Clemente, on June 9, 2020, that he was handling a confidential matter for Mr. Snyder that involved Mr. Clemente's father-in-law, Mr. Schar. Mr. Chirite offered to resign from the Board if either Mr. Clemente or Mr. Schar were not comfortable with the situation. On June 9, and several more times over the next month and a half, Mr. Chirite was assured that Messrs. Clemente and Schar were completely comfortable with Mr. Chirite's continuing to serve on Comstock's Board. Nor does Respondent have any legitimate basis for concern about the "abrupt" "timing" of Mr. Chirite's resignation on July 31. Respondent knows exactly why Mr. Chirite resigned. The resignation was precipitated by Mr. Schar having falsely accused Mr. Chirite on that same day of serious professional misconduct unrelated to Mr. Chirite's role as a Comstock director.

*Third*, not only did Comstock know in early June of Mr. Chirite's engagement by Mr. Snyder, but Comstock knows that Mr. Chirite has worked with Mr. Snyder and the Washington Football Team for over two decades. Indeed, Mr. Schar – a minority investor in the Team – and his son-in-law came to know Mr. Chirite when he was the Team's General Counsel. Shortly thereafter, Mr. Chirite was recruited by Mr. Clemente to join Comstock's Board. Respondent was well aware that Mr. Chirite continued to work with Mr. Snyder and the Team at various times thereafter.

*Fourth*, Respondent's further insinuations that Mr. Chirite has not met his obligations as "an active member of the New York State Bar" and "an officer of the court" (Decl. Ex. 7 at 2) are similarly unsupported. In the first place, Mr. Chirite has done nothing improper. Moreover, he has never served as Respondent's legal counsel, and he is not involved in the instant proceeding or the underlying defamation action in India. That a board member happens to be an attorney does not render his work "legal in nature." (*Id.*)

4

*Fifth*, the Letter states that it purportedly "serves as the Company's termination . . . 'for cause'" of Mr. Chirite's December 2019 Agreement to serve as a Special Independent Director. Decl. Ex. 7 at 3. Yet little more than a week earlier, Mr. Thompson wrote to Mr. Chirite to say he "[w]as sorry to hear about your resignation"; to arrange for payout of Mr. Chirite's compensation in Comstock shares for his Board service; and to "confirm [Mr. Chirite's] understanding that consulting agreement terminated upon [his] resignation" on July 31. Ex. A. Similarly, Mr. Clemente told Mr. Chirite on August 4: "I have always valued your contributions to the CHCI board . . . and I was looking forward to continuing our efforts with you on the team. I viewed your recently enhanced role on CHCI's Board as a valuable leadership role . . . . I know that the other Board members, as well as [General Counsel] Jubal [Thompson] would agree with my assessment on this. . . . Nonetheless, I appreciate the difficult position that you are in currently and have no desire to complicate things for you. . . ." Ex. A.

Whatever the motivations for Respondent's repudiation of its laudatory views of Mr. Chirite's service to Comstock, there is nothing suspicious about Mr. Chirite's resignation. For all of these reasons, Mr. Chirite respectfully requests that the Court either (i) strike the false and defamatory Letter and all references to it from the record; or alternatively, (ii) permit Mr. Chirite to respond to Comstock's malicious allegations by supplementing the existing record to include the Chirite Letter.

**ARGUMENT**

I. **Mr. Chirite May Intervene as of Right under Federal Rule of Civil Procedure 24(a)(2)**

Federal Rule of Civil Procedure 24(a)(2) provides that the Court must permit any person to "timely" intervene who claims "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Mr. Chirite's motion is timely, as it was submitted on August 26, 2020, five days after Comstock filed the Letter on August 21. The "underlying suit has progressed" hardly at all in that time and there would be no "prejudice" to the parties. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014).

To intervene as a matter of right under Rule 24(a)(2), the moving party must show that "(1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981). Each of these factors favors intervention by Mr. Chirite.

  A. *Mr. Chirite Has an Interest in the Subject Matter of this Action*

Mr. Chirite has at least two cognizable interests at stake in this action. *First*, Mr. Chirite earns his living by engaging in multiple business and legal matters in which the confidence of others in his integrity is crucial to his success. The Letter blatantly – and baselessly – impugns his integrity by suggesting that he has failed to fulfill his fiduciary duties, disregarded confidentiality obligations and violated ethical rules. "Among the interests that satisfy these criteria [for intervention] are injury to reputation." *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y.

6

1996) (citing *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 373, 392 (2d Cir.1981)) (reputational injury satisfies the requirements under Fed. R. Civ. P. 24(a)(2) for "the existence of a sufficient interest" and that "disposition of that interest would effectively impede the putative intervenors' ability to protect that interest."). Because Respondent has injected the matter of Mr. Chirite's integrity into this action, it has created and recognized his interest in the subject matter at issue.

*Second*, the professional misconduct alleged by Comstock could, were the allegations to go unrebutted, be used against him in bar disciplinary proceedings. In terms of showing his interest in the subject matter, the intervenor "need not prove that he would be bound in a res judicata sense by any judgment in the case." *Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). Instead, the "focus of this requirement is whether the absentee will be practically disadvantaged if not permitted to intervene." *Shenandoah Riverkeeper v. Ox Paperboard, LLC*, No. 3:11-CV-17, 2011 WL 1870233, at *3 (N.D.W. Va. May 16, 2011). Here, Mr. Chirite may suffer practical disadvantage in other forums if he is unable to intervene to defend himself against Comstock's claims that he has engaged in conduct that violates the rules of professional responsibility to which lawyers are required to adhere.

### B. *Disposition of this Action Would Practically Impede Mr. Chirite's Ability to Protect His Interests*

If the defamatory accusations in Respondent's Letter remain unanswered on the public record, Mr. Chirite's ability to defend his integrity and his professional ethics will be impeded. Whether Mr. Chirite is involved in potential future business dealings, legal proceedings, or otherwise finds himself in the public eye, there is no substitute for wiping Respondent's reckless accusations from the record, or at least supplementing the record to include Mr. Chirite's response.

Alternatively, the Court may strike "immaterial, impertinent, or scandalous matter" from the record either "on its own" or on a motion. Fed. R. Civ. P. 12(f)(1)-(2). "Information is 'immaterial' for the purposes of Rule 12(f) if it has 'no essential or important relationship to the claim for relief or the defenses being pleaded' and is 'impertinent if it does not pertain, and is not necessary, to the issues in question.'" *Meth v. Natus Med. Inc.*, No. 3:14-CV-173, 2014 WL 3544989, at *3 (E.D. Va. July 17, 2014) (citation omitted). Here, the allegations of Mr. Chirite's misconduct are immaterial because they are not essential to the issues in this proceeding and are impertinent because they are tangential at best to any legitimate issue. Moreover, "'scandalous' matter is that which improperly casts a derogatory light on someone," as Respondent's accusations against Mr. Chirite surely do, and motions to strike are particularly favored when they concern scandalous material. 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1382 (3d ed.).

### C. *Mr. Chirite's Interests Are Not Adequately Protected by the Parties*

"[T]he burden on the applicant of demonstrating a lack of adequate representation 'should be treated as minimal.'" *Teague v. Bakker*, 931 F.2d 259, 262 n.10 (4th Cir. 1991) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972)). Here, Comstock is harming Mr. Chirite's interests, while the § 1782 discovery is the focus of Mr. Snyder's efforts. While Mr. Chirite has had business relationships with both Mr. Snyder and Comstock, it is not central to the § 1782 petition to ensure that Mr. Chirite's integrity and professional reputation are robustly defended. Mr. Chirite undoubtedly will be more "vigorous" in protecting and defending those interests, particularly from Respondent who is hell bent on attacking him. *Id.* Mr. Chirite therefore has met the "minimal" burden of showing that the "representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Alt v. U.S. EPA*, No. 2:12-CV-42, 2012 WL 12892210, at *6 (N.D.W. Va. Oct. 9, 2012) (quoting *Dimond v. D.C.*, 792 F.2d 179, 192 (D.C. Cir. 1986)).

8

## II. Mr. Chirite Should Be Granted Permissive Intervention

Even if the Court determines that Mr. Chirite may not intervene as a matter of right, the Court should exercise its discretion to permit intervention, which is authorized when the movant "has a claim or defense that shares with the main action a common question of law." Fed. R. Civ. P. 24(b)(1)(B). Here, Comstock has introduced into this proceeding accusations that raise questions of law and fact concerning Mr. Chirite's involvement with the parties, and Mr. Chirite seeks to intervene for the limited purpose of addressing those matters for the reasons and on the bases discussed above.

"Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080, 1081 (8th Cir.1999); *see Backus v. South Carolina*, No. 3:11-CV-03120-HFF, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012) ("Rule 24(b) is to be construed liberally in favor of intervention."). Intervention is favored where "there has been no showing that allowing this *limited intervention* will delay or prejudice adjudication of the rights of any party to this action." *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003) (emphasis added). Here, the "limited intervention" sought would not in any way delay or prejudice the adjudication of this proceeding.

## III. Mr. Chirite Seeks Limited Relief upon Intervention

As noted, this motion seeks intervention only for a narrow and limited purpose. In such circumstances, the Court's decision is not "an all-or-nothing choice between grant or denial: Rule 24 also provides for limited-in-scope intervention." *United States v. City of Detroit*, 712 F.3d 925, 931 (6th Cir. 2013). Here, Mr. Chirite requests narrowly tailored relief "responsive among other things to the requirements of efficient conduct of the proceedings." *Id.* at 931-32 (quoting Fed. R. Civ. P. 24, Advisory Committee's Note, 1966 Amend.).

For the reasons discussed above, Mr. Chirite seeks leave to intervene for the limited purpose of moving to strike immaterial, impertinent, or scandalous material pursuant to Federal Rule of Civil Procedure 12(f). In particular, Mr. Chirite would move to strike the Letter and all references thereto in Respondent's opposition papers, as follows: (a) from Respondent's Opposition Brief, the second full paragraph on page 2, numbered paragraphs 16 and 17 on pages 5 and 6, and the phrase "the resignation of Norman Chirite just days before filing this action" from the last paragraph on page 13; (b) paragraphs 27 and 28 from Mr. Thompson's Declaration; and (c) the entirety of Respondent's Letter, attached as Exhibit 7 to Mr. Thompson's Declaration.

In the alternative, Mr. Chirite requests leave to intervene for the limited purpose of supplementing the record with information required to mitigate the harmful consequences of Respondent's accusations. To this end, Mr. Chirite respectfully requests that the Chirite Letter, attached hereto as Exhibit A, be entered by the Court on the public docket.

Respondent publicly attacked Mr. Chirite by gratuitously filing the Letter in this proceeding less than two days after it was delivered and before Mr. Chirite had an opportunity to respond. Respondent compounded the attacks against Mr. Chirite by injecting further defamatory innuendo both in the Thompson Declaration and in its Opposition Brief. As a matter of basic fairness, Mr. Chirite should be permitted at a minimum to answer the defamatory accusations against him in the same public forum in which Respondent made them. The Chirite Letter answers those accusations and rebuts the imputations to him of improper or unethical professional conduct.

## CONCLUSION

For the foregoing reasons, Mr. Chirite respectfully requests that his motion for limited intervention be granted, and that Respondent's Letter and related references be stricken or, in the alternative, that the record in this proceeding be supplemented by filing the Chirite Letter on the public docket.

Dated: August 26, 2020

Respectfully submitted,

SCHERTLER ONORATO MEAD & SEARS LLP

By: /s/ Stuart A. Sears
Stuart A. Sears (VBN 71436)
901 New York Avenue, NW, Suite 500 West
Washington, DC 20001
Tel: (202) 628-4199
Fax: (202) 628-4177
ssears@schertlerlaw.com

David A. Barrett (Pro Hac Vice pending)
Steven I. Froot (Pro Hac Vice pending)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
dbarrett@bsfllp.com
sfroot@bsfllp.com

*Attorneys for Norman Chirite*