# EXHIBIT A



August 24, 2020

<u>VIA EMAIL AND FEDERAL EXPRESS</u>

Nicholas M. DePalma, Esq.
Venable LLP
8010 Towers Crescent Drive
Tysons Corner, VA 22182

Re:   <u>Comstock Holdings Companies, Inc. ("Comstock")</u>

Dear Mr. DePalma:

This firm represents Mr. Norman Chirite in connection with the matters referred to in your letter of August 19, 2020 (the "Letter").  Please direct any further communications to my attention.  In sum -

- The Letter is riddled with inaccuracies and makes unsupported accusations of fiduciary and ethical misconduct against Mr. Chirite that are false and defamatory.

- The Letter was delivered in an irregular manner unworthy of a major law firm, by literally scotch-taping it on the front door of Mr. Chirite's house, facing outward without an envelope, notwithstanding that Comstock has used his email address for years for Board-related communications.

- You improperly filed the Letter publicly in a federal court proceeding (the "section 1782 Action") in which Mr. Chirite is not involved, while not waiting for a response. The public filing was made less than 48 hours after "delivery" of the Letter and three days before the arbitrary deadline given for a response.  Nor did you even serve Mr. Chirite with a copy of the federal court pleadings that attach the defamatory Letter.

- Mr. Chirite has never used confidential Comstock information for any purpose other than to discharge his duties as a Comstock board member, nor has he breached any duties to Comstock – contractual, fiduciary or otherwise – before or after his resignation on July 31, 2020.

- The Letter's purported termination "for cause" of the parties' December 20, 2019 letter agreement under which Mr. Chirite served as a Special Independent Director (the "Agreement") is insupportable in fact or law, because no "cause" exists and because the Agreement was terminated when Mr. Chirite resigned three weeks earlier.



The purpose of your Letter is evident – to attempt to intimidate or embarrass Mr. Chirite, who served Comstock loyally as an independent director for 14 years, in a misguided attempt to assist Dwight Schar, the father-in-law and close business associate of Comstock's CEO Chris Clemente, in Mr. Schar's dispute with the Washington Football team and Dan Snyder.  The ostensible premise for the Letter is contained in the opposition brief you filed on behalf of Comstock in the section 1782 Action:  that Mr. "Snyder recently hired away one of Comstock's special independent directors, Norman Chirite, a former employee of the Washington Football Team."  This statement is preposterous.

As is well-known to Comstock, Mr. Chirite has worked with and for Daniel Snyder and the Washington Football Team for well over two decades, including serving as the team's general counsel and as managing director of RedZone Capital Management Company.  It was in that context that Mr. Schar met Mr. Chirite, when Mr. Schar purchased a minority interest in the Team in 2003.  In 2006, Mr. Clemente asked Mr. Chirite to join Comstock's board of directors, and as Mr. Clemente is well aware, Mr. Chirite has continued to work with Mr. Snyder and the Team at different times in the years since.

Thus, there is nothing surprising, as the Letter and opposition brief falsely suggest, in Mr. Chirite's continued involvement with Mr. Snyder and the Team.  Nothing in the Agreement or otherwise restricted Mr. Chirite from working for Mr. Snyder or the Team while he served on the Comstock board.  As a matter of courtesy, Mr. Chirite reached out to Mr. Clemente on June 9, 2020 (not in March 2020, as the Letter erroneously states) to inform him that he was handling a confidential matter for Mr. Snyder that involved Mr. Schar (not Comstock).  Mr. Clemente informed Mr. Chirite that he was aware of the matter.  During the June 9 conversation and several subsequent conversations between Mr. Clemente and Mr. Chirite, including on June 17 and in early July 2020, Mr. Chirite advised that if either Mr. Clemente or Mr. Schar were not comfortable with this situation, Mr. Chirite would resign from the Comstock board. Yet Mr. Clemente repeatedly assured Mr. Chirite that he and Mr. Schar both were completely comfortable with Mr. Chirite's representation of Mr. Snyder in the matter involving Mr. Schar, and Mr. Clemente repeatedly encouraged Mr. Chirite to remain on the Comstock board.

The Agreement did not require that Mr. Chirite provide any reason for resigning from Comstock's board when he informed Mr. Clemente that he was doing so on July 31.  To the extent that Mr. Chirite referenced a "conflict" as the reason, there can be no doubt that Messrs. Clemente and Schar knew exactly what he meant; Mr. Chirite's resignation was precipitated by a false accusation of professional misconduct, unrelated to Comstock, that Mr. Schar made against Mr. Chirite that very day.

Despite the unpleasant circumstances and his awareness of Mr. Chirite's involvement on behalf of Mr. Snyder in the dispute with Mr. Schar, Mr. Clemente never expressed any concern over Mr. Chirite's "compliance" with fiduciary duties or confidentiality obligations owed to Comstock.  To the contrary, Mr. Clemente wrote to Mr. Chirite on August 4, 2020:

"I have always valued your contributions to the CHCI board . . . .  Your increased involvement over the past year helped formalize CHCI's new direction and I was looking forward to continuing our efforts with you on the team.  I viewed your recently enhanced

2



role on CHCI's Board as a valuable leadership role . . . .  I know that the other Board members, as well as Jubal would agree with my assessment on this.

"Nonetheless, I appreciate the difficult position that you are in currently and have no desire to complicate things for you. . . ."

In the same vein, on August 10, 2020, Jubal Thompson, Comstock's General Counsel, wrote to Mr. Chirite:

"Was sorry to hear about your resignation.  . . .

"100,000 RSU's granted pursuant [sic] to you in the Independent Director Consulting Agreement were subject to partial vesting which resulted in 27,083 shares being available for issuance under the award.

"Please confirm your understanding that consulting agreement terminated upon your resignation and the amount of shares and I'll have Eric process for you."

The statement in the Letter that Mr. Chirite provided services to Comstock that "were legal in nature" is vague and misleading – Mr. Chirite never served as Comstock's legal counsel, and the fact that Mr. Chirite is a corporate director who also happens to be a lawyer does not change this fact.  Nor has Mr. Chirite had any involvement in either the defamation action filed in India or the section 1782 Action, which he first learned involved Comstock from the Letter. Furthermore, at no time during or subsequent to his service on the Comstock board has Mr. Chirite been involved in any matter or proceeding adverse to Comstock.  Mr. Chirite has never disclosed Comstock's confidential information to Mr. Snyder or the Washington Football Team or for any improper purpose.  Whatever disagreements may have arisen between Mr. Snyder and Mr. Schar do not change these facts, or the laudatory comments by Comstock's senior officers about Mr. Chirite's long service to the company.

With respect to the numbered demands at the end of the Letter, the first three are rejected as well beyond the scope of any obligations Mr. Chirite owes to Comstock by virtue of the Agreement or otherwise.  With respect to the fourth numbered demand, please identify the "anticipat[ed] future litigation" to which you are referring.

Finally, please contact me to discuss implementing the terms of the Agreement concerning the destruction or return by Mr. Chirite of confidential Comstock materials pursuant to paragraph 6(b), and concerning Comstock's issuance of stock to Mr. Chirite pursuant to paragraph 3(a) as Mr. Thompson has already agreed.

Very truly yours,

David A. Barrett

cc: Norman Chirite, Esq.