**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: Application of Daniel Snyder for | **)** | |
| an Order Under 28 U.S.C. § 1782 to | **)** | Misc. Case No. 1:20-mc-00023 |
| Conduct Discovery for Use in Foreign | **)** | |
| Proceedings | **)** | |

**MARY ELLEN BLAIR'S OPPOSITION IN RESPONSE TO DANIEL SNYDER'S APPLICATION FOR DISCOVERY IN AID OF FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

Tom Spiggle (VA Bar No. 72022)
THE SPIGGLE LAW FIRM
4830 31st St., Suite A
Arlington, VA 22206
Tel: 202-796-0976
Fax: 202-540-8018
tspiggle@spigglelaw.com

Lisa J. Banks (*pro hac vice* forthcoming)
Debra S. Katz (*pro hac vice* forthcoming)
KATZ, MARSHALL & BANKS, LLP
1718 Connecticut Ave., NW, Sixth Floor
Washington, D.C. 20009
Tel: 202-299-1140
Fax: 202-299-1148
banks@kmblegal.com
katz@kmblegal.com

Attorneys for Mary Ellen Blair

**TABLE OF CONTENTS**

*PRELIMINARY STATEMENT*........................................................................................*1*

*BACKGROUND* ..........................................................................................................*3*

   **I.**   **PETITIONER'S APPLICATION** .......................................................................**3**

   **II.**   **THE INDIA PROCEEDING**...........................................................................**3**

   **III.**   **PETITIONER'S PROPOSED DISCOVERY** .....................................................**4**

*LEGAL STANDARD*....................................................................................................*5*

*ARGUMENT* ..............................................................................................................*7*

   **I.**   **SNYDER'S DISCOVERY REQUESTS SHOULD BE DENIED BECAUSE THE REQUESTED DISCOVERY IS NOT "FOR USE" IN A FOREGIN PROCEEDINGS, AND INSTEAD SERVES TO HARASS AND INTIMIDATE BLAIR.**...............**7**

      A.   The Requested Discovery Is Not "For Use" In the India Proceeding, as the Overwhelming Majority of Snyder's Requests Are Irrelevant to the India Proceeding. ........7

      B.   The Limited Discovery That Is Relevant to the India Proceeding May Be Obtained from Parties to the Proceeding Via the Indian Legal System.................................................9

      C.   The Application Should be Dismissed Because It is a Fishing Expedition Made in Bad Faith for the Purpose of Harassment. ...................................................................................12

   **II.**   **THE BALANCE OF THE *INTEL* DISCRETIONARY FACTORS WEIGHS AGAINST PETITIONER'S APPLICATION.** ....................................................**13**

      A.   The First Discretionary Factor Weighs Against Granting the Application Because the Information Sought is Subject to the Jurisdiction of a Foreign Proceeding..........................14

      B.   Petitioner's Discovery Request Is Unduly Intrusive or Burdensome and Should Be Rejected. ...................................................................................................................15

**III.  PETITIONER'S APPLICATION SHOULD BE DENIED, AND SANCTIONS SHOULD BE IMPOSED, BECAUSE IT DOES NOT COMPORT WITH THE FEDERAL RULES OF CIVIL PROCEDURE.** ....................................................................17

A.   Petitioner's Application Violates Federal Rules of Civil Procedure 26 and 45. ...........17

B.   Snyder Used this Application to Smear Blair in a Judicial Forum, thus Insulating Him from a Defamation Claim. ....................................................................................................18

C.   This Court should Impose Attorneys' Fees to Cover the Cost of Replying to this Frivolous, Overbroad, and Harassing Application. ..............................................................19

***CONCLUSION*** ....................................................................................................................***21***

Mary Ellen Blair ("Blair"), a former employee of the Washington Redskins football team, respectfully submits this Opposition, together with her accompanying Declaration, and a courtesy draft Order to this Court, in response to the application of Daniel Snyder ("Snyder" or "Petitioner") for discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782 (the "Application").   As argued more fully below, Snyder's Application should be denied because it was made in bad faith, for the purpose of harassing Blair and intimidating other former employees who have been speaking to reporters about the sexually hostile work environment that Snyder perpetuated during his 21-year ownership of the team.   Moreover, the Application fails to meet the requisite legal standard under 28 U.S.C. § 1782 because it unreasonably seeks materials that are irrelevant to the foreign proceeding and fails to take reasonable steps to protect Blair from undue burden and expense.   To the contrary, the sweeping and invasive discovery requests seem specifically crafted for the purpose of burdening Blair and for providing Snyder with a vehicle to disparage her publicly while hiding behind the doctrine of judicial immunity to avoid a defamation suit being brought against him.   Petitioner's violation of Rule 45 warrants sanctions in the form of Blair's fees and costs in having to oppose this frivolous and harassing application.

## PRELIMINARY STATEMENT

In the Application, Petitioner asks this Court to permit him to serve discovery on Blair, allegedly in aid of a proceeding Petitioner initiated in the High Court of Delhi at New Delhi (the "India Proceeding").   Blair is not a party to the India Proceeding.   She has no knowledge of the issues underlying the India Proceeding.   There is no basis in fact to Petitioner's allegations that Blair is connected to the India Proceeding.   Instead, Petitioner uses this Application as an opportunity to attack Blair's character, intimidate current and former employees, and to go on a

fishing expedition to support future litigation.  Petitioner's Application is not well-grounded in fact or law and was filed in bad faith.

While Petitioner asserts that the requested discovery is "in aid" of a foreign proceeding, almost all of the discovery he seeks is unrelated to the India Proceeding, and instead seeks documents and information that is highly intrusive and imposes an undue burden on Blair. Petitioner alleges without any factual basis at all that she is an active participant in a campaign of defamation against him that led to the publication of the media articles that are the basis for the India Proceeding.  *See* Dkt. 1 (Application.) at ¶ 4.  However, Petitioner's assertions linking Blair to the India Proceeding are completely speculative, and indeed, there is no factual basis for the assertions.  Blair has no documents or information responsive to the relevant portions of the subpoenas, nor does she have any knowledge of the relevant topics for examination.  *See* Blair Decl. at ¶ 6.

Petitioner could obtain information confirming that Blair has no connection to the issues underlying the India Proceeding from the defendants to the India Proceeding, through legitimate discovery methods within the Indian legal system.  Petitioner has not used the available discovery procedures in the Indian Proceeding to seek this information.  Rather, this request is the most egregious sort of fishing expedition – a broad demand to a third party who has no interest, involvement or even awareness of the facts or issues in the case, in a naked attempt to harass and intimidate an individual with no connection to the foreign proceeding.  Petitioner claims that because Blair may have knowledge about an article in *The Washington Post* about a culture of sexual harassment at the then-named Washington Redskins, she must be working with foreign publishers to accuse him of sex trafficking.  Yet even if Blair has spoken to *The Washington Post* related to its reporting about sexual harassment of employees of the

Washington Redskins, speaking to *The Washington Post* about her own person experience as an employee of Dan Snyder is of course quite different from speaking to foreign publications about Snyder's possible connection to sex trafficking and convicted sexual predator Jeffrey Epstein.

The Application, which is filled with numerous falsehoods and *ad hominem* attacks, is an obvious fishing expedition to determine what Snyder's perceived enemies have said to the press, and a crude effort to silence Blair and others who may wish to communicate with legitimate news organizations about the culture of sexism, harassment and abuse that has existed at the highest levels of the Washington Football team for decades.

Accordingly, Petitioner's Application should be denied.

## BACKGROUND

### I.      PETITIONER'S APPLICATION

On August 10, 2020, Petitioner filed his Application with this Court seeking an order pursuant to Section 1782 authorizing Petitioner to serve discovery on Blair and her landlord Comstock.  The Application included as attachments the *Subpoena Duces Tecum* and *Subpoena Ad Testificandum* that Snyder seeks to serve on Blair.  *See* Dkt. 1-4; 1-5.  The subpoenas on their face fail to comply with the requirements of Rule 45(d), which imposes sanctions if the proponent does not take steps to avoid imposing undue burden or expense on the subpoenaed party. The requests are fatally broad in scope and do not contain any stated time limitation. Most importantly, the subpoenas seek documents and information wholly unrelated to the India Proceeding, and instead constitute a fishing expedition intended to harass and intimidate Blair, and other current and former employees of Snyder and of the Washington Football Team, from speaking to the media about their work environment.

### II.     THE INDIA PROCEEDING

Petitioner alleges that the proposed subpoenas seek discovery from Blair and Comstock that will be relevant to, and for use in, the India Proceeding. This is not true. The India Proceeding arises from the publication of a series of news articles on the MEA WorldWide website ("MEAWW") connecting Snyder to sexual misconduct, including sex trafficking, and an affiliation with sexual predator Jeffrey Epstein. In the India Proceeding, Petitioner asserts claims for defamation *per se* against Eleven Internet Services LLP ("Eleven"), and its Indian subsidiary MEAWW, and against Indian residents Anay Chowdhary, Nirnay Chowdhary, Prarthna Sakar, and Jyotsna Basotia. Snyder alleges that Sakar and Basotia wrote the articles about him, and that the articles were published at the direction of the Chowdhary brothers. Neither Blair nor her property management company in Virginia is a party to the India Proceeding.

## III.   PETITIONER'S PROPOSED DISCOVERY

In support of his Application, Snyder alleges a conspiracy in which everything negative about him in the press is a result of the efforts of "hidden third-party clients" who fabricate stories about Snyder and pay others to do the same. *See* Dkt. 1 (Application.) at ¶¶ 3, 27. He alleges without any basis that Blair, his former Executive Assistant, is an "active participant" in this conspiracy against him. *See* Dkt. 1 (Application.) at ¶ 4.

The proposed subpoenas seek documents that fall broadly into three categories: (1) all documents and communications between Blair and MEAWW or Eleven; (2) all documents and communications concerning Snyder, the Washington Football team, or any employee thereof; and (3) all documents and communications concerning her personal residential lease agreement. Notably, only the first category is related to the India Proceeding, and there exist no documents or communications responsive to this category of requests, because Blair has had no communications with MEAWW or Eleven. *See* Blair Decl. at ¶ 6. The latter two categories,

sweeping in their breadth, are intended to harass and intimidate Blair and by extension to frighten other former employees of the Washington Football team from speaking out about the sexual harassment the experienced or witnessed.

## LEGAL STANDARD

A court may grant an application under Section 1782 only if: (i) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made; (ii) the discovery is for use in a proceeding before a foreign tribunal; and (iii) the application is made by a foreign or international tribunal or "any interested person." *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004). The statutory elements are merely the threshold, however, as "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004); s*ee In re Nat'l Syndicate for Elec. Energy*, No. 1:13-MC-20, 2014 WL 130973, at *2 (E.D. Va. Jan. 14, 2014); *In re Blue Oil Trading Ltd.*, No. 3:09MC152-RJC, 2009 WL 3247854, at *2 (W.D.N.C. Oct. 5, 2009) (Section 1782 authorizes, but does not require, a district court to grant a petition for judicial assistance if the statutory requirements are met).

Even when the statutory requirements are met, district courts have "wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems." *In re Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996); *see also In re Apotex Inc., Misc*. No. M12–160, 2009 WL 618243, at *2 (S.D.N.Y. Mar. 9, 2009); *In re Green Dev. Corp. S.A. de C.V.*, No. WDQ-15-2985, 2015 WL 10319091, at *3 (D. Md. Oct. 1, 2015) (citing *Intel*, 542 U.S. at 244-45) ("Even where the threshold, jurisdictional

requirements are satisfied, the district court has broad discretion in deciding whether to grant discovery requests under Section 1782.").

The Supreme Court has identified the following four discretionary factors courts should consider in determining whether to grant a Section 1782 application:

(1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent §1782 aid;

(2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3) Whether the §1782 request conceals a[n] attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; and

(4) Whether the subpoena contains unduly intrusive or burdensome requests.

*In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing *Intel*, 542 U.S. at 264-65).

In addition to the statutory requirements and the discretionary factors identified in *Intel*, "[t]he proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b)."  *In re Application of Eli Lilly & Co.*, No. 3:09MC296 (AWT), 2010 WL 2509133, at *3 (D. Conn. June 15, 2010). *See, e.g., In re Godfrey*, 526 F. Supp. 2d 417, 423-24 (S.D.N.Y. 2007). Rule 26(b) requires the court to limit discovery, if, inter alia, the evidence "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

"In this regard, if the district court determines that a party's discovery application

under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation."  *In re Apotex Inc*., 2009 WL 618243, at *3 (internal citation omitted). "In assessing [whether to limit discovery], special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." Cohen v. City of New York, No. 05-civ-6780, 2010 WL 1837782, at *3 (S.D.N.Y. May 6, 2010). *See also Jack Frost Labs., Inc. v. Physicians & Nurses Mfg. Corp*., No. 92 CIV 9264, 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994) ("we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others").

Petitioner does not dispute that this legal standard governs its request for Section 1782 relief and to the subpoenas he seeks to enforce.  *See* Dkt. 1 (Application.) at ¶ ¶ 52-64.  Instead, he invokes a hodgepodge of arguments and authorities in favor of his position that are either inapposite, distinguishable or both.  Under all applicable legal standards, Petitioner's application should be denied.

## ARGUMENT

**I.     SNYDER'S DISCOVERY REQUESTS SHOULD BE DENIED BECAUSE THE REQUESTED DISCOVERY IS NOT "FOR USE" IN A FOREIGN PROCEEDINGS, AND INSTEAD SERVES TO HARASS AND INTIMIDATE BLAIR.**

**A.  The Requested Discovery Is Not "For Use" In the India Proceeding, as the Overwhelming Majority of Snyder's Requests Are Irrelevant to the India Proceeding.**

Section 1782 allows a court to grant an application only if the discovery is "for use" in a proceeding before a foreign tribunal.  *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004).  Central to the "for use" requirement is the relevance of the information sought to the foreign proceeding.  *See In re Lloreda*, 323 F. Supp. 3d 552 (S.D.N.Y.

2018).  The party seeking the discovery bears the burden of establishing that the statutory requirements are met. *See Certain Funds, Accounts, and And/Or Inv. Vehicles v. KPMG LLP*, 798 F.3d 113, 118 (2d Cir. 2015); *Digital Shape Techs., Inc. v. Glassdoor, Inc*., 2016 WL 5930275, at *3 (N.D. Cal. Oct. 12, 2016) ("The party issuing the subpoena has the burden of demonstrating the relevance of the information sought.").  A party seeking discovery pursuant to § 1782 must show that the discovery sought is relevant to the claims and defenses in the foreign tribunal.  *See In re Veiga*, 746 F.Supp.2d 8, 18 (D.D.C. 2010).  Petitioner is unable to meet the burden of establishing that the discovery he seeks from Blair and her property management company are relevant to and "for use" in the India Proceeding.

In the India suit, Snyder has asserted a claim for defamation against the Indian company Eleven, its Indian subsidiary MEAWW, and Indian residents which he alleges authored and directed the publication of these articles.  Snyder's filing baselessly asserts that Blair provided the source for these articles.  She did not.  Indeed, as her declaration makes clear, she had no contact all with any of the defendants in Snyder's lawsuit and has no knowledge of any of the facts underlying his allegations.  Of the 19 categories of information in Snyder's proposed Requests for Production directed at Blair, only the following three categories concern any connection between Blair and Eleven, MEAWW, or the individual Indian defendants.

The remaining 16 categories can be reduced to the following two general categories: (1) all documents and communications concerning Snyder, the Washington Football team, or any employee thereof, and (2) all documents and communications concerning Blair's personal residential lease agreement.   These sweeping and overly-broad categories, which contain no time limitation, contain no information relevant to the India Proceeding.  Similarly, the subpoenas against Blair's property management company are entirely unrelated to the Indian

lawsuit alleging that two residents of India directed two Indian writers to publish the stories about Snyder's sexual misconduct.  These requests should be denied because of their attenuated relevance to the India Proceeding.  *See Rainsy v. Facebook, Inc*., 311 F. Supp. 3d 1101, 1112 (N.D. Cal. 2018) (denying § 1782 application where the requested documents encompass far more than the question at issue and therefore have no relevance to the foreign case).

Petitioner requests this discovery to harass and intimidate Blair in an attempt to silence her and others from lawfully speaking about the sexist and abusive culture Snyder perpetuated with the Washington Football Team.  Petitioner's requested discovery is clearly not "for use" in the India Proceeding, and therefore, should be denied on statutory grounds.  *See In re Escallon*, 323 F. Supp. 3d 552, 559 (S.D.N.Y. 2018) (denying § 1782 application on statutory grounds because "Petitioner's discovery request appears to be little more than a fishing expedition to acquire documents and information that have at best limited relevance to the [foreign proceeding]").

In an interview on a podcast, Petitioner's lawyer, Joe Tacopina, disclosed that the true purpose of this Application is a fishing expedition in the hopes of collecting evidence to use in a proceeding in the United States.  *See Three outstanding interviews with Scott Turner, Terry McLaurin and Dan Snyder's attorney, plus Reuben Foster audio*, WASHINGTON FOOTBALL TALK (Aug. 14, 2020), available at https://art19.com/shows/washington-football/episodes/152d00ff-50c5-4b16-b5db-35ef353fc845.   The Application should be denied because it is not for use in a foreign proceeding, as Tacopina candidly acknowledged.

### B.  The Limited Discovery That Is Relevant to the India Proceeding May Be Obtained from Parties to the Proceeding Via the Indian Legal System.

Though the remaining three categories may be relevant to the India Proceeding, the Court should deny the application in full because Petitioner has the ability to gather this discovery

through the India Proceedings.  Blair is not a party to the India Proceeding, and the relevant

information sought is available from parties to the India Proceeding.  The Court should be

particularly sensitive to the Petitioner's failure to take advantage of the full discovery

opportunities in India that are currently available in the India Proceeding.  *See Jack Frost Labs.,*

*Inc. v. Physicians & Nurses Mfg. Corp*., No. 92 CIV. 9264, 1994 WL 9690, at *2 (S.D.N.Y. Jan.

13, 1994) (District courts should be "particularly sensitive to any prejudice to non-litigants

drawn against their will into the legal disputes of others.");  *In re Penn Cent. Commercial Paper*

*Litig*., 61 F.R.D. 453, 467 (S.D.N.Y. 1973) (noting that the rationale for permitting non-party

discovery presumes a situation where the information sought is "unavailable from a party" or

"not otherwise obtainable by the movant's own efforts"); *Oleg Cassini v. Jovan, Inc*., No. 84-

civ-2117, 1987 WL 7733, at *2 (S.D.N.Y. Mar. 3, 1987) (denying non-party discovery where the

material was "obtainable by the movant's own efforts"); *Haworth, Inc. v. Herman Miller, Inc*.,

998 F.2d 975, 978 (Fed. Cir. 1993) (district court properly required the movant "to seek

discovery from its party opponent before burdening the nonparty" with an ancillary proceeding);

*Insituform Techs., Inc. v. Cat Contracting, Inc*., 914 F. Supp. 286, 287 (N.D. Ill. 1996) (quashing

a deposition subpoena directed to a non-party where the information sought could be had from

the defendant).

To the extent that Petitioner believes that he is entitled to the discovery in the United

States pursuant to Section 1782, he should first use all available mechanisms under the Indian

legal system and request that the Indian Court, with jurisdiction over the India Proceeding, obtain

it.  Petitioner proffers no valid reason why the U.S. discovery mechanism is the only way, or

even the preferred method, of gathering evidence for use in the India Proceeding. Rather, the

foreign tribunal, in this case the India Court, is in the best place to determine whether Blair had

any connection to the defendants in the India action – she did not, as the declaration makes clear – and to protect third parties from harassing discovery.  Accordingly, this Court should deny nonparty discovery from Blair in the United States, and allow the India Court a full opportunity first to consider party discovery and then to make a determination as to the relevance of the information sought from non-parties and its usefulness to the matter. *See Intel*, 542 U.S. at 265; *In re Application of OOO Promnefstroy*, Misc. No. M 19-99(RJS), 2009 WL 3335608, at *8 (S.D.N.Y. Oct. 15, 2009); *In re Microsoft Corp*., 428 F. Supp. 2d at 196.  Because the India Court will be able to determine that the production of such information in the United States would be unhelpful or inappropriate, the "enforcement of [Petitioner's] subpoenas would constitute a clear circumvention of the [Indian Court's] procedures[,] which the Supreme Court expressly prohibited in Intel." *In re Microsoft Corp*., 428 F. Supp. 2d at 195.  To proceed first with discovery in the United States, as Petitioner suggests, would be wholly inappropriate and "divest the [Indian Court] of jurisdiction over this matter and replace a [Indian] decision with one by this Court." *Id.*

The available mechanisms under the Indian legal system will confirm that there is no connection between Blair and the India Proceeding.   Within the Indian legal system, Petitioner can question and request evidence from the Indian defendants regarding their relationship, or lack thereof, with Blair.  Petitioner has chosen not to do so, likely because he does not truly believe that Blair has any connection to the subject of the India Proceeding.

The breadth of Petitioner's discovery requests; the filing's unnecessarily malicious comments about Blair's character; and the accompanying statements from Petitioner's lawyer threatening that "the full weight of the law [will] come[] down heavily on all those" who speak out against Petitioner," all indicate that Petitioner's true goal is to intimidate Blair, and others

who have worked for him, to discourage them from coming forward to discuss the sexually

hostile work environment that Snyder perpetuated for decades.

**C.   The Application Should be Dismissed Because It is a Fishing Expedition Made in Bad Faith for the Purpose of Harassment.**

Petitioner lacks any basis to believe that Blair has any connection to or any knowledge of

the facts underlying the India Proceeding.  Petitioner's limited evidence that Blair may have

talked to reporters at *The Washington Post* about her personal experience working for Snyder is

entirely unrelated to allegations that she has served as a source for foreign articles connecting

Snyder to Jeffrey Epstein.  Although Blair had a negative experience working for Snyder, she

has no reason to believe that he is affiliated with Jeffrey Epstein, and has never made

representations to that effect.  *See* Blair Decl. at ¶ 6.  Blair has no connection to the India

Proceeding.  *See* Blair Decl. at ¶ 6; Michael Phillip,  *Is Dan Snyder Paranoid, Or Are They*

*Actually Out to Get Him?*, RICHMOND TIMES-DISPATCH (Aug. 16, 2020), available at

https://richmond.com/sports/professional/phillips-is-dan-snyder-paranoid-or-are-they-actually-

out-to-get-him/article_0f637c90-a64d-5085-b0f4-e411403805ea.html (MEA Worldwide editor-

in-chief Dean Andrew Williams states that his publication has never had any interactions with

Blair).

Further, the overbreadth and marginal relevance of the requested discovery indicate that

the goal of the application is harassment and intimidation.  If "[a] request appears only

marginally relevant to the foreign proceeding[,] [this] may in certain cases suggest that the

application 'is made in bad faith [or] for the purpose of harassment.'"  *In re Vale S.A.*, 2020 WL

4048669, at *5 (S.D.N.Y. July 20, 2020).  Given the limited relevance, the detailed negative

comments about Blair, and the overbreadth of the requests, the whole application should be

denied.  *See Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[I]f a § 1782 application "is

made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*, just as it can if discovery was sought in bad faith in domestic litigation.").

The overbreadth of Snyder's requests, many of which are unrelated to the claims in the India suit, indicate that Snyder is seeking this information for a purpose unrelated to the India suit. *See Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 115 (D.D.C. 2011) (Denying application where "wide-ranging request suggests that [Petitioner] is seeking information more for his general use than for use [in the foreign proceeding]"), aff'd sub nom. *In re Application for an Order Pursuant to 28 U.S.C. 1782*, 473 F. App'x 2 (D.C. Cir. 2012).

A broad request of limited relevance, as here, may be dismissed as an attempt "harass and intimidate non-party." *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1345 (D. Colo. 2015) (Discovery request seeking documents related to any payment non-party had been promised or had received from litigants in Ecuadorian environmental action against corporation, was not "for use in a foreign tribunal," as required to be discoverable, but instead was propounded to harass and intimidate non-party). This is especially true where there were many more convenient, less burdensome, and less expensive ways to obtain the information relevant to the claims, and request could be seen as a fishing expedition designed to set up future claims against the non-party. *See id.* at 1350; General Steel Domestic Sales, LLC v. Chumley, No. 13–cv–769–MSK–KMT, 2014 WL 3057496, at *1 (D.Colo. July 7, 2014) (motion to quash non-party discovery granted when information sought was "overbroad, irrelevant, unnecessary, and was a fishing expedition designed to gain information ... not for purposes of [the] litigation").

## II.   THE BALANCE OF THE *INTEL* DISCRETIONARY FACTORS WEIGHS AGAINST PETITIONER'S APPLICATION.

This Court should not exercise its discretion in favor of ordering Petitioner's discovery because the balance of the *Intel* discretionary factors weighs strongly against such an order. Even where a court has the authority to grant a Section 1782 application because the statutory prerequisites have been met, the court still must determine whether to exercise its discretion by weighing the factors set out by the Supreme Court in *Intel*. *See Intel*, 542 U.S. at 264 ("a district court is not required to grant a §1782(a) discovery application simply because it has the authority to do so."). As noted above, those factors include: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether "unduly intrusive or burdensome requests" should be "rejected or trimmed." *Id*. at 264-65.

### A. The First Discretionary Factor Weighs Against Granting the Application Because the Information Sought is Subject to the Jurisdiction of a Foreign Proceeding.

The first *Intel* factor considers whether the discovery is sought from a person who is a participant in the foreign proceeding. This factor weighs heavily against Petitioner's Application. Blair is not a participant in the foreign proceeding. Were Petitioner to seek discovery from the Indian defendants in the India Proceeding, he would find confirmation that Blair has no connection to these defendants, and no connection to the India Proceeding. He should therefore seek this discovery in the Indian legal system, from parties to the legal proceeding, rather than in the United States from a nonparty. *See In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, No. M 19-

99, 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) ("Because the Court concludes that nearly all the documents that the subpoena seeks are also in the possession of parties to the foreign proceeding, the first factor weighs squarely in favor of [respondent]."); *In re Fischer Advanced Composite Components AG*, 2008 WL 5210839 (W.D. Wash. 2008) (noting that where discovery is equally available in both foreign and domestic jurisdictions, a district court may conclude that to apply 28 U.S.C.A. § 1782 would be duplicative).

**B. Petitioner's Discovery Request Is Unduly Intrusive or Burdensome and Should Be Rejected.**

Section 1782 is intended to provide narrow assistance to a foreign proceeding. *See In re Appliciation of OOO Promnefstroy*, 2009 WL 3335608, at *9. Petitioner's request for broad categories of documents with no time limitation certainly does not fit within the intended purpose of Section 1782. Petitioner entirely ignores the undue burden imposed on Blair by Petitioner's proposed subpoena and reveals the true intent of his Application to seek unlimited discovery. Petitioner does not seek the narrow assistance of U.S. discovery procedures to obtain a specific single document or report or known documents related to a single transaction. *See In re Application of OOO Promnefstroy*, 2009 WL 3335608, at *9. Nor does Petitioner limit his search for documents that are conceivably related to the India Proceeding. Instead, Petitioner seeks full U.S. discovery of every document or communication that conceivably may concern him, the Washington Football Team, or any employee of the Washington Football Team.

By way of illustration, Petitioner's draft subpoena requests such overbroad and sweeping categories of information such as:

- "All Documents and Communications concerning Snyder, including but not limited to telephone bills or records, and text messages."

- "All Documents and Communications concerning Snyder's family members, including but not limited to telephone bills or records, and text messages."

- "All Documents and Communications concerning any current or former employees of Snyder, including but not limited to telephone bills or records, and text messages."

- "All Documents and Communications concerning the Washington Football Team, including but not limited to all documents and communications concerning current or past owners, managers and/or principals thereof, and including but not limited to telephone bills or records, and text messages."

- "All Documents and Communications concerning any current or former employees of the Washington Football Team, including but not limited to telephone bills or records, and text messages."

*See* Dkt. 1-3 (Exhibit A.) pg. 6.

This request is unduly intrusive and burdensome.  This Court should reject Petitioner's attempt to require such an overbroad and harassing fishing expedition.  *See In re Apotex Inc*., No. M12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (Denying § 1782 request and finding it unduly intrusive and burdensome where requested discovery requires a non-party to devote "substantial resources to perform onerous searches and then review voluminous documents"); *In re Degitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007) (granting motion to quash a subpoena under § 1782 in part because the "plain language of the requests reveal that they seek broad categories of documents," requests for which would unduly burden the target in terms of time, effort, and expense).

Because these documents would reveal no connection to the issues underlying the India Proceeding, the immense burden of this discovery is not outweighed by its probative value.  *See*

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) (denying § 1782 application where the requested discovery would be unduly burdensome for a nonparty, and the burden is not justified by the limited probative value); *In re Lazaridis*, 865 F. Supp. 2d 521, 527 (D.N.J. 2011) (granting motion to quash subpoenas under § 1782 where "the breadth of the request is great and intrusive," and there is "no time limitation to the request").

### III.   PETITIONER'S APPLICATION SHOULD BE DENIED, AND SANCTIONS SHOULD BE IMPOSED, BECAUSE IT DOES NOT COMPORT WITH THE FEDERAL RULES OF CIVIL PROCEDURE.

Section 1782 expressly states that all discovery pursuant to the statute shall be conducted "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). Petitioner's Application should be denied because its proposed subpoena for the production of documents does not conform to the standards set forth in the Federal Rules of Civil Procedure. First, the subpoenas seek information that can be obtained from a more convenient source. Second, the proposed subpoenas are overly broad and unduly burdensome.  This violation warrants sanctions.

### A.  Petitioner's Application Violates Federal Rules of Civil Procedure 26 and 45.

Under Federal Rule of Civil Procedure 26(b)(2)(C)(i), a Court must limit discovery if it determines that the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  The discovery sought by Petitioner plainly does not comply with this standard because to the extent that there is any connection between Blair and the defendants to the India Proceeding – which there is not – Petitioner could seek evidence of this connection from the defendant parties to the India Proceeding, via the India legal system.

Petitioner's proposed subpoena is improper under Federal Rule of Civil Procedure 45(c)(1), which requires that a "party or attorney responsible for issuing and serving a subpoena

must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena."  Petitioner's subpoena fails to comply with this directive. First, Petitioner should have initially sought information from the defendants to the India Proceeding concerning the lack of any connection between Blair and the issues underlying the foreign lawsuit.  *See Coffeyville Res. Ref. & Mktg*., LLC v. Liberty, No. 4:08MC00017, 2008 WL 4853620, at *2 (E.D.Ark. Nov. 6, 2008) (Under Rule 45(c)(1), "a party should first seek documents from the opposing party before seeking those documents from non-parties.").  Second, the breadth of this request imposes an undue burden on Blair, especially considering the fact that only three of the nineteen requested categories of information have any relation to the India Proceeding, and serve only to harass and intimidate Blair, in an attempt to silence Blair and others who may wish to communicate with legitimate news organizations about the culture of sexism, harassment and abuse that has existed at the highest levels of the Washington Football team for decades.

## B.  Snyder Used this Application to Smear Blair in a Judicial Forum, thus Insulating Him from a Defamation Claim.

Petitioner's application contains several demonstrably false allegations attacking Blair's character.  Many of these, such as the claims that she has been evicted several times and that her wages have been garnished, lack any basis in fact.  She has never been evicted from any property, and her wages have never been garnished.  *See* Blair Decl. at ¶ 7.  Nor did she either receive or offer bribes related to the dissemination of any information about Petitioner.  *See* Blair Decl. at ¶ 6.  Petitioner's application claims that Blair was terminated from her position as Snyder's Executive Assistant, when in fact, Blair resigned, and Snyder as her former employer knows, or should know, that she voluntarily resigned.  *See* Blair Decl. at ¶ 4.

While these knowingly false and baseless allegations should support a strong claim for defamation, Snyder made these statements in a court filing in order to evade the consequences of

his malicious and knowingly false attacks on Blair's character.  *See Mansfield v. Bernabei*, 727 S.E.2d 69, 73 (Va. 2012) (applying absolute immunity to statements made as part of a judicial proceeding);  *Lindeman v. Lesnick*, 268 Va. 532, 537, 604 S.E.2d 55, 58 (2004) (granting absolute privilege to publisher of defamatory statements, "even though the communication is made maliciously and with knowledge that it is false.").   Multiple news sources then repeated Snyder's baseless attacks on Blair, including the *New York Times*, *Washington Post*, *Vanity Fair*, *Sports Illustrated*, *ESPN*, *Forbes*, the *Daily Mail*, and many others.  Blair is a private citizen. The widespread publication of Snyder's false and disparaging allegations has cause Blair severe emotional distress and reputational damage, which was almost certainly Snyder's intent.  As further evidence of Snyder's intent to intimidate Blair, he has sent private investigators to follow her, and to speak with her friends and co-workers.  A number of her friends and co-workers have been approached by investigators with questions about Blair, and some have identified themselves as working for Snyder.

Petitioner's application should be denied because it is part of his efforts to harm Blair, and to intimidate her and others who have bravely spoken about the abuse they have suffered while employed by Petitioner.

### C.  This Court should Impose Attorneys' Fees to Cover the Cost of Replying to this Frivolous, Overbroad, and Harassing Application.

Under Rule 45(d)(1), an attorney or party invoking the Court's subpoena power has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and courts are required to enforce that duty through the imposition of "an appropriate sanction," including attorney's fees.  *Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. CV 12-10803, 2015 WL 5132583, at *2 (E.D. Mich. Apr. 24, 2015) (awarding costs

and fees under Rule 45(d)(1) where Petitioner failed to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.")

Here, Petitioner failed to take reasonable steps to protect Blair from undue burden and expense. To the contrary, the sweeping and invasive requests seem specifically crafted for the purpose of burdening Blair. Petitioner's violation of Rule 45 warrants sanctions in the form of Blair's fees and costs in having to oppose this frivolous and harassing application. *See Green v. MOBIS Alabama,* LLC, 2014 WL 2041857, at *2–3 (M.D.Ala. May 16, 2014) (awarding costs and fees where party "failed to take any steps, let alone any reasonable ones, to avoid imposing an undue burden or expense on [the subpoenaed person]"); *Huntair, Inc. v. Climatecraft, Inc*., 254 F.R.D. 677, 680 (N.D. Okla. 2008) (finding nonparty entitled to be reimbursed for attorney fees it incurred defending against the subpoenas that violated Rule 45(c) by not taking reasonable steps to protect the nonparty from undue burden and expense); *Molefi v. Oppenheimer Tr*., No. 03 CV 5631 FBVVP, 2007 WL 538547, at *4 (E.D.N.Y. Feb. 15, 2007)(awarding Rule 45 costs and fees where Petitioner failed "to ensure, through reasonable steps, that [the nonparty] would not be unduly burdened by the subpoena," and instead "issued the subpoena to [the nonparty] for the sole purpose of imposing upon him an undue burden."); *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002) (finding Rule 45 sanctions proper, in part, because there was "no indication that the [offending party] attempted to tailor its subpoenas. . ."); *Liberty Mutual Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000) (granting a motion to quash third-party subpoenas and imposing a sanction for counsel's violation of Fed.R.Civ.P. 45(c)(1) for failure to "take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena."); *Batture Fleet, Inc. v. Browner*, No. 00 Civ. 205, 2000 WL 748093, at *2 (E.D.La. Jan. 8, 2000) (upholding a

magistrate judge's award of sanctions to each of two subpoenaed non-parties where the subpoenas violated Rule 45(c)(1)).

## **CONCLUSION**

For the reasons stated above, Blair respectfully requests that this Court deny Petitioner's Application for discovery in aid of a foreign proceeding pursuant to 28 U.S.C.§ 1782 in its entirety as per order of this Court. Accordingly, the Ex Parte Order should not be entered and the Subpoenas should not be issued.


DATED: September 3, 2020                     Respectfully submitted,

                                             */s/ Tom Spiggle*
                                             Tom Spiggle (VA Bar No. 72022)
                                             THE SPIGGLE LAW FIRM
                                             4830 31st St., Suite A
                                             Arlington, VA 22206
                                             Tel: 202-796-0976
                                             Fax: 202-540-8018
                                             tspiggle@spigglelaw.com

                                             Lisa J. Banks (*pro hac vice* forthcoming)
                                             Debra S. Katz (*pro hac vice* forthcoming)
                                             KATZ, MARSHALL & BANKS, LLP
                                             1718 Connecticut Ave., NW, Sixth Floor
                                             Washington, D.C. 20009
                                             Tel: 202-299-1140
                                             Fax: 202-299-1148
                                             banks@kmblegal.com
                                             katz@kmblegal.com

                                             Attorneys for Mary Ellen Blair

## CERTIFICATE OF SERVICE

I hereby certify that on the 3th day of September, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Brittany Davidson
Reed Smith LLP
7900 Tysons One Place, Suite 500
McLean, VA 22102
Tel: (703) 641-4200
bdavidson@reedsmith.com

Rizwan A. Qureshi
Reed Smith LLP
1301 K Street NW
Suite 1000, East Tower
Washington, DC 20005
Tel: (202) 414-9200
rqureshi@reedsmith.com

Joseph Tacopina
Tacopina, Seigel & DeOreo
275 Madison Avenue
New York, New York 10016
Tel: (212) 227-8877
jtaopina@tacopinalaw.com

*/s/ Tom Spiggle*
Tom Spiggle (VA Bar No. 72022)
THE SPIGGLE LAW FIRM
4830 31st St., Suite A
Arlington, VA 22206
Tel: 202-796-0976
Fax: 202-540-8018
tspiggle@spigglelaw.com

Lisa J. Banks (*pro hac vice* forthcoming)
Debra S. Katz (*pro hac vice* forthcoming)
KATZ, MARSHALL & BANKS, LLP
1718 Connecticut Ave., NW, Sixth Floor
Washington, D.C. 20009
Tel: 202-299-1140
Fax: 202-299-1148

22

banks@kmblegal.com
katz@kmblegal.com


Attorneys for Mary Ellen Blair